Case 1:21-gj-00048-BAH  Document 1  Filed 10/27/21  Page 1 of 6

Case: 1:21–gj–00048
Assigned To : Howell, Beryl A.
Assign. Date : 10/27/2021
Description: Misc. (O–DECK)

**THE MADDEN LAW GROUP PLLC**

1455 Pennsylvania Avenue, NW, Suite 400
Washington, D.C. 20004
(202) 349-9836
TheMaddenLawGroup.com

Jerome A. Madden, Principal
JMadden@TheMaddenLawGroup.com
Admitted: D.C., Ohio

Virginia Whitner Hoptman, Of Counsel
VHoptman@TheMaddenLawGroup.com
Admitted: D.C., VA, MD

Charles Rowan, Of Counsel
CRowan@TheMaddenLawGroup.com
Admitted: D.C., VA

October 22, 2021

*By Hand Delivery*

The Honorable Chief Judge Beryl A. Howell
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

Subject: Application of Mr. Giorgi Rtskhiladze for Access to the Transcript of His Testimony before the Grand Jury Investigating Russian Interference in the 2016 Presidential Election.

Related Judicial Proceeding: *Rtskhiladze v. Mueller, et al.*, No. 20-cv-1591 (D.D.C.) (CRC)

Dear Chief Judge Howell:

I represent Giorgi Rtskhiladze as the plaintiff in the above-referenced civil action. In 2018, Mr. Rtskhiladze testified for seven hours before the grand jury investigating Russian interference in the 2016 presidential election. Pursuant to Local Rule 6.1, I respectfully request on behalf of Mr. Rtskhiladze that he and his attorney be granted the opportunity to review his grand jury testimony and all written answers to questions by the team of special prosecutors, including all email exchanges.

This request is based upon Mr. Rtskhiladze's above-referenced civil action asserting defamation and violation of the Privacy Act against Special Counsel Mueller and the Department of Justice. Footnote 112, Volume II, of the Report on the Investigation into Russian Interference in the 2016 Presidential Election wrongfully states that he is a Russian businessman who took active steps to suppress the so-called golden-rain tapes mentioned in the unverified Steele Dossier of Donald J. Trump when as a private citizen he traveled to Russia in connection with the Miss Universe pageant. Footnote 112 created a worldwide media feeding frenzy that promptly ended Mr. Rtskhiladze's successful twenty-year career fostering close ties between the United States, his native country Georgia, and other former Soviet satellite countries.

On September 1, 2021, the district court dismissed this action at the initial pleading stage concluding that Mr. Rtskhiladze failed to plausibly plead that the special prosecutors "intentionally or willfully" defamed him in Footnote 112: "… Rtskhiladze has not plausibly alleged that anyone involved with Footnote 112 acted with the requisite state of mind to intentionally deprive him of his rights under the Privacy Act." Mem. Ord. at 28 (ECF CM Doc. No. 32). Had the court not erred in dismissing his suit, transcripts of his grand jury testimony would have been produced under a protective order and would have demonstrated plainly the intentional and willful misconduct of the drafters of Footnote 112.

Although Mr. Rtskhiladze's opportunity to conduct discovery has been prematurely obstructed, he plans to appeal the judgment and under D.C. Circuit caselaw, a grand jury witness is entitled to review their grand jury testimony and written answers to questions provided to the prosecutors outside of the grand jury room. *In re Grand Jury*, 490 F.3d 978 (D.C. Cir. 2007). Plaintiff believes that the transcript of his testimony will demonstrate that he unequivocally and emphatically informed special prosecutor Jeannie Rhee, other prosecutors in the grand jury room, and the grand jury itself that her strident characterization of his nationality as Russian and a "Russian businessman" was incorrect.

This mischaracterization was not inadvertent. During over eight hours of questioning the day before his grand jury testimony, Mr. Rtskhiladze answered questions from prosecutor Rhee about his nationality in which he informed her bluntly that he was a citizen of the United States and Georgia and had resided in the United States since the early 1990s. He emphasized this fact because such characterizations not only would be inaccurate and misleading but would paint him as some sort of nefarious Russian actor in the eyes of those with whom he does business and the public in general. And that is exactly what happened. Mr. Rtskhiladze's appeal to prosecutor Rhee not to mislead the jurors by characterizing him as "a Russian Businessman" was ignored.

Footnote 112 also directly tied Mr. Rtskhiladze to the alleged Trump tapes to which prosecutor Rhee and other members of the Mueller team knew from hours of questioning he had no connection. *See* Declaration of Giorgi Rtskhiladze (attached). Mr. Rtskhiladze believes the transcript of his grand jury testimony and written answers to questions from the prosecutors will show unequivocally that Mr. Rtskhiladze had no personal knowledge of the existence of the purported tapes and that the only information he possessed came from a conversation with a friend who overheard someone discussing the rumored tapes at a nearby dining table as he repeatedly told the prosecutors.

Granting Mr. Rtskhiladze access to review his own grand jury testimony is not discretionary: "The Government has little good reason to prevent witnesses from reviewing their transcripts. Weighing the interests of witnesses and the Government, we therefore hold that the grand jury witnesses are entitled under Fed.R.Crim.P. 6(e)(3)(E)(i) to review transcripts of their own grand jury testimony in private at the U.S. Attorney's Office or a place agreed to by the parties or designated by the district court." *In re Grand Jury*, 490 F.3d at 990.

To be sure, this Application is filed in connection with Mr. Rtskhiladze's right to appeal which must be filed on or before November 1, 2021. Notice of the submission of this

Application will be filed in his district court action. After he has reviewed the transcript of his grand jury testimony and other writings he provided to the special prosecutors, Mr. Rtskhiladze intends to submit an affidavit under seal in his district court suit and ask that it be made part of the record on appeal.

The intentional and willful defamation in Footnote 112 has destroyed Mr. Rtskhiladze's career and materially harmed his wellbeing and that of his young family that has long resided in Newtown, CT. Through this civil action he is pursuing the only avenue available to him to restore his good name and business reputation that was bludgeoned by release of Footnote 112 of the Mueller Report.

Mr. Rtskhiladze, therefore, respectfully requests that this Application be granted and that the Department of Justice be ordered to produce for review at a time and place mutually agreeable his grand jury transcript and all other written materials provided by him to the special prosecutors.

Very truly yours,

*Jerome A. Madden*

JEROME A. MADDEN
Principal
D.C. Bar No. 272260

Enclosure

cc:

Rebecca Cutri-Kohart
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530

David W. Inkeles
Trial Attorney
U.S Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044

Case: 1:21-gj-00048
Assigned To : Howell, Beryl A.
Assign. Date : 10/27/2021
Description: Misc. (O–DECK)

## **Declaration of Plaintiff Giorgi Rtskhiladze**

1. I, Giorgi Rtskhiladze, submit this sworn declaration in support of my application to review my grand jury testimony and all materials provided to the special prosecutors that investigated Russian interference in the 2016 presidential election and aver as follows:

2. In May 2018, I testified for approximately seven hours before the grand jury investigating Russian interference into the 2016 presidential election. There, I was questioned by special prosecutor Jeannie Rhee and other members of the Special Counsel Robert Mueller's team of prosecutors. Special prosecutor Rhee stridently characterized me to the grand jury as a Russian from a prominent Russian family and I responded sharply that I was neither Russian by nationality nor by citizenship. I told prosecutor Rhee unambiguously in front of the grand jury and other prosecutors in the room that I was born and raised in Georgia by a reputable Georgian family and that I have resided in the United States since the early 1991. In sum, through my answers to questioning by the special prosecutors and my testimony before the grand jury the Mueller team was fully aware that I am a citizen of the United States and a longtime American businessman who was born in the Republic of Georgia.

3. Following my testimony before the grand jury I responded to a number of emails seeking further information.

1

4. I further informed prosecutor Rhee that Georgia and Russia are fierce adversaries because of Russia's invasion of Georgia in 2008 and the unlawful occupation of Georgian territory. This invasion of Georgian sovereignty created a crisis in eastern Europe and the United States played a critical role in reducing tensions between the two nations. I also emphasized that since the Russian invasion of Georgia, I, as a Georgian American, have dedicated myself to fostering mutually beneficial ties between the United States and Georgia through commercial, cultural, and philanthropic endeavors.

5. During questioning by the special prosecutor I made clear that I had no personal knowledge of the purported, compromising tapes of Donald J. Trump supposedly held in Russia. I explained that the only information I possessed was the result of a discussion with a colleague, who while dining overheard a conversation by unknown persons at a nearby table talking about compromising tapes. I unequivocally told the special prosecutor that I informed Michael Cohen, then the personal lawyer to the presidential candidate Trump, about this gossip because my business partners in Georgia and I were working on a Trump real estate project in Georgia. This kind of gossip would not reflect well on the Trump brand, and I concluded that Trump, through Cohen, should be aware of the rumor.

6. I testified that I took no actions of any kind to attempt to verify the existence or authenticity of the purported tapes and, therefore, could not have taken steps to suppress them. I told the special prosecutor that my text exchange with Cohen was an isolated incident in which I passed along for business reasons a potentially embarrassing rumor. Following that exchange I

2

have not discussed the subject of the text exchange with Cohen or anybody else associated with the Trump Organization.

7. I believe that my grand jury transcript and subsequent responses to follow-up emails will support these attestations.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Giorgi Rtskhiladze

Dated: October ___, 2021

3