UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GRAND JURY PROCEEDINGS, *et. al.*

Case No. 21-gj-00048-BAH

**UNDER SEAL**

**DEPARTMENT OF JUSTICE'S RESPONSE TO THE MOTION OF GIORGI RTSKHILADZE FOR PERMISSION TO TAKE NOTES DURING THE REVIEW OF THE TRANSCRIPT OF HIS GRAND JURY TESTIMONY**

This Court previously granted Mr. Rtskhiladze's motion for "access" to his grand jury transcript and exhibits, specifying that review should occur "at a Department of Justice conference room at a date and time mutually agreeable to the parties." Minute Order (Dec. 9, 2021). The government did not oppose such review, nor did it oppose Mr. Rtskhiladze reviewing together with his counsel.[1] Dep't of Justice's Response to the Application of Giorgi Rtskhiladze for Access to His Grand Jury Transcript (Response to Application) (Nov. 24, 2021). In anticipation of such a review by Mr. Rtskhiladze and his counsel, the government requested that Mr. Rtskhiladze and his counsel not have electronic devices in the room with the grand jury materials or take notes. Mr. Rtskhiladze now moves for permission to take notes during the review. Motion of Giorgi Rtskhiladze for Permission to Take Notes During the Review of the Transcript of His Grand Jury Testimony (Motion) (Dec. 15, 2021).

Because notetaking would essentially permit Mr. Rtskhiladze to create his own copy of the transcript, and because this Court's order did not authorize Mr. Rtskhiladze to take a copy, review without notetaking is more appropriate and consonant with the Court's December 9 order. And,

---

[1] The government did oppose Mr. Rtskhiladze's request for non-grand jury materials.

contrary to Mr. Rtskhiladze's belief that notes will be necessary due to the length of the transcript, the testimony is in fact quite limited and its length will not obstruct his review.

If Mr. Rtskhiladze's review brings to light information that would create a particularized need for him to receive a copy of the transcript, for example, to file in another matter, he may so move the Court at that time. Indeed, this Court has already explicitly stated that its grant of Mr. Rtskhiladze's petition for access "does not by itself authorize further disclosure (e.g., for inclusion in filings to be made in the related civil matter) of the contents of the transcripts and exhibits at issue." Minute Order (Dec. 9, 2021).

The government agrees with Mr. Rtskhiladze that whether notes may be taken during the review of the grand jury materials is within the discretion of the Court. *In re Grand Jury*, 490 F.3d 978, 990 (D.C. Cir. 2007). In reaching that conclusion in *In re Grand Jury*, the D.C. Circuit stated that a court deciding whether to permit access to grand jury materials, the Court "must weigh the competing interests of the Government and grand jury witnesses." *Id.* at 987. And the D.C. Circuit made it clear that a petitioner would be required to meet a higher standard to obtain a copy of his or her transcript than to merely review the transcript of his or her testimony. *Cf. id.* at 985 (concluding that petitioners were entitled to access to their grand jury transcripts, which would meet their needs, thus not resolving whether they were entitled to copies). In particular, the D.C. Circuit identified concerns about witness intimidation, "a serious problem in our criminal justice system," as a factor weighing against providing witnesses with a copy of their transcript. *Id.* at 989; *see also id.* at 990 (concluding that the balance of the interests favored "a witness's merely reviewing the transcript in private at the U.S. Attorney's office or a place agreed to by the parties or designated by the district court," and not reaching the issues of a witness receiving "copies of transcripts").

Here, Mr. Rtskhiladze petitioned for "access" to the transcript, not for a copy. *See* Application of Giorgi Rtskhiladze for Access to His Grant Jury Transcript in the Investigation into

Russian Interference in the 2016 Presidential Election (Application) at 4 (Nov. 2, 2021).  Mr. Rtskhiladze now seeks permission to take notes during the review, however, which would in effect enable him to create a copy of the transcript himself.  "Permitting notetaking blurs the line between the access and copy contexts, since one can imagine an appellant transcribing his transcript and, in effect, creating a copy."  *In re Grand Jury*, 566 F.3d 12, 20-21 (1st Cir. 2009).  The countervailing considerations to granting witnesses copies of their transcripts should thus apply to Mr. Rtskhiladze's request.

While the government appreciates Mr. Rtskhiladze's offer to destroy all notes taken, the creation of such notes and their retention by Mr. Rtskhiladze and his counsel—even temporarily—raises many of the same concerns as providing a copy of Mr. Rtskhiladze's testimony.

Here, Mr. Rtskhiladze has made no particularized showing of need for a copy or for the copy-like ability to take notes.  Mr. Rtskhiladze previously stated that he believes reviewing his transcript will demonstrate that he "informed [the special prosecutor] bluntly that he was a citizen of the United States and Georgia and had resided in the United States since the early 1990s," as well as that he "had no personal knowledge of the existence of the purported tapes and that the only information he possessed came from a conversation with a friend who overheard someone discussing the rumored tapes at a nearby dining table."  Application at 2-3.  He could pursue these inquiries through review alone, particularly given that the volume for his review is limited.  And, as the government has noted, it is unlikely that access or a copy of the transcript would alter the district court's reasoning in Mr. Rtskhiladze's civil case, in any event.[2]

---

[2] *See* Response to Application at 4 n.2 (noting that the district court already rejected the inference that "the material in Footnote 11 was so nakedly defamatory that it could only have been included intentionally or willfully," and concluded that the "factual errors" in Footnote 112 "are similarly not plausibly chalked up to intentional malfeasance on behalf of DOJ or Special Counsel Mueller's team . . . .  And, as the Court has already explained, these specific errors would not plausibly result in the claimed harm" (quoting *Rtskhiladze v. Mueller*, No. 20-cv-1591-CRC, 2021 WL 3912157, at *7, *14 (D.D.C. Sept. 1, 2021))).

It is further clear from the D.C. Circuit's discussion of the objectives to be served through a witness's review of his or her own testimony, *In re Grand Jury*, 490 F.3d at 988, followed by its consignment of the question of notes to the district court, that the D.C. Circuit did not believe notetaking to be a universally required element of meaningful review.

Accordingly, the government does not intend to permit Mr. Rtskhiladze or his counsel to take notes during their review of the grand jury transcript unless the Court directs otherwise. If the Court does permit notetaking, the government requests that the Court order Mr. Rtskhiladze and his counsel to not disclose their notes beyond counsel working on the civil matter and to destroy all copies of any notes after completing the drafting of their proposed declaration or, if for any reason they decide not to proceed with a declaration, at the close of the civil case.

Dated: December 17, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch

*/s/ Rebecca M. Kopplin*
REBECCA M. KOPPLIN
Trial Attorney (California Bar No. 313970)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW Washington, DC 20005
Telephone: (202) 514-3953
Facsimile: (202) 616-8470
E-mail: rebecca.m.kopplin@usdoj.gov

*Counsel for the United States*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing response was served on counsel for Plaintiff, Jerry Madden, by email on December 17, 2021.

*/s/ Rebecca M. Kopplin*
REBECCA M. KOPPLIN