UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GRAND JURY PROCEEDINGS, *et. al.*

Case No. 21-gj-00048-BAH

**RESPONSE TO PETITIONER'S MOTION TO UNSEAL ALL RULE 60(b)
MATERIALS AND FOR PRODUCTION OF HIS GRAND JURY TRANSCRIPT**

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

I.     Factual Background Concerning Mr. Rtskhiladze's Civil Case ........................................ 3

II.    Procedural History Concerning Mr. Rtskhiladze's Civil Case .......................................... 4

ARGUMENT ......................................................................................................................... 5

I.     Mr. Rtskhiladze's Request for a Transcript, or to Publicly Disclose the Transcript, Should Be Denied. ........................................................................................................... 5

    A.    Mr. Rtskhiladze's Request for a Transcript Should Be Denied Because He Does Not Demonstrate Need. ............................................................................. 5

    B.    Mr. Rtskhiladze's Request for Authorization for Unrestricted Possession of the Transcript Should Also Be Denied Because He Makes No Showing of Need, Much Less a Showing of Particularized Need. ....................................... 7

        i.    Disclosing the Transcript in Its Entirety Would Be Overbroad and Would Not Further the Interests of Justice. ................................................. 9

        ii.   The Government's Interests in Secrecy Outweigh Mr. Rtskhiladze's Undescribed Interest in Disclosure. ..................................... 9

II.    Mr. Rtskhiladze's Request to Publicly Disclose the Grand Jury Material Contained in His Rule 60(b) Motion Should Likewise Be Denied. ................................. 12

        i.    Disclosure Would Not Avoid "Injustice" Because Mr. Rtskhiladze's Rule 60(b) Arguments Are Meritless. ............................... 13

        ii.   The Government's Interests in Grand Jury Secrecy Outweigh Mr. Rtskhiladze's Interests in Disclosure, Particularly Because the Government Does Not Oppose The Disclosure of the Information in Mr. Rtskhiladze's Rule 60 Motion to Judge Cooper Under Seal. ........ 14

CONCLUSION ..................................................................................................................... 15

**INTRODUCTION**

This matter arises because of an apparent error in one footnote of the Mueller Report, which incorrectly identifies Mr. Rtskhiladze as Russian rather than Georgian. Mr. Rtskhiladze brought a civil suit in district court alleging, *inter alia*, that the Government violated the Privacy Act by intentionally and willfully misidentifying him in the footnote and that he has suffered actual damages as a result. *Rtskhiladze v. Mueller*, No. 20-cv-1591-CRC (D.D.C. filed June 17, 2020). That case was dismissed by Judge Cooper, Order, *Rtskhiladze v. Mueller*, No. 20-cv-1591-CRC, ECF No. 31, and is currently on appeal. Mr. Rtskhiladze sought relief from this Court under Criminal Rule 6(e)(3)(E)(i) to access his grand jury transcript and to take notes for the purpose of filing a Rule 60 motion in his civil suit (which he indicated would be sealed), which the Government did not oppose, and which this Court ultimately granted with conditions. Minute Order (Dec. 9, 2021); Mem. Op. & Order, ECF No. 11. Mr. Rtskhiladze, however, did not adhere to the Court's conditions or his representations, and instead filed grand jury material from his review on the public docket in his civil case before Judge Cooper. ECF Nos. 13-16; Minute Order (Jan. 21, 2022). Those filings have since been sealed.

Mr. Rtskhiladze now moves (1) to receive a copy of his grand jury transcript for unstated purposes, and, apparently, for authorization to disclose such a transcript publicly, and (2) to unseal the Rule 60(b) motion that was sealed by Judge Cooper. Pet.'s Mem. Supp. Mot. Unseal Rule 60(b) Mats. & Prod. Grand J. Trans. (Pet's Mot.), ECF No. 17-1. This Court has already denied Mr. Rtskhiladze's request for unsealing, noting that an unsealing motion would be properly directed to Judge Cooper, Minute Order (Jan. 26, 2022). Accordingly, we construe Mr. Rtskhiladze's second request as a request "for authorization to disclose this transcript, in whole or part, *see* Fed. R. Crim. P. 6(e)(3)(E)(i), as an antecedent step for inclusion in a public Rule

60(b) filing in a civil case." Minute Order (Jan. 26, 2022).  In order to publicly disclose the material in his Rule 60(b) filing, Mr. Rtskhiladze must of course seek and obtain authorization to disclose the grand jury information in the civil suit, even under seal (*i.e.*, to disclose it to Judge Cooper and other court staff authorized to view sealed filings).  So long as the grand jury information remains sealed, the Government does not oppose disclosure of the information in the 60(b) proceedings before Judge Cooper.

The Government opposes Mr. Rtskhiladze's requests for public disclosure—of the entire transcript and the material contained in his Rule 60 motion—as well as the request for a copy of the transcript. The standard for a petitioner to receive a transcript is higher than to receive access alone, and the standard to disclose grand jury information publicly is more stringent yet.  These standards exist for good reasons.  As applied here, there remain open cases stemming from Special Counsel Mueller's work, and thus value in continued secrecy of the grand jury proceedings. Mr. Rtskhiladze's arguments are unavailing.  As to the Rule 60 proceedings, he cannot show a need for public disclosure.   His Rule 60(b) arguments are meritless, and can be made without reference to the grand jury information or under seal in any event.  As for receiving a copy of the transcript, Mr. Rtskhiladze and his attorney have already reviewed the grand jury transcript and drafted a Rule 60(b) motion and accompanying declaration.  And although the petitioner seeking access bears the burden of establishing the need for public disclosure, Mr. Rtskhiladze, has offered no explanation as to why he now needs a copy of the transcript, which is in any event overbroad.

## BACKGROUND

We provide this short background relating to Mr. Rtskhiladze's civil case since he now seeks authorization to disclose grand jury material there.  For a further explanation of that case,

see U.S.'s MTD, *Rtskhiladze v. Mueller*, No. 20-cv-1591-CRC, ECF No. 20; Robert S. Mueller, III's MTD, *Rtskhiladze v. Mueller*, No. 20-cv-1591-CRC, ECF No. 21.

### I. Factual Background Concerning Mr. Rtskhiladze's Civil Case

In 2017, Robert S. Mueller III was appointed to serve as Special Counsel to investigate "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump" and any other matters arising directly from the investigation. DOJ, Office of the Deputy Attorney General, Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017). As Special Council, Mr. Mueller was required to "provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel." 28 C.F.R. § 600.8(c). *See* Mueller Report.[1]

The resulting Mueller Report mentions Mr. Rtskhiladze 27 times. Mueller Report, Vol. I at ii, 69-70, n.313-18; Vol II at 27-28, n.112, 138 n.945, B-9. Mr. Rtskhiladze objects to his appearance in just one of these footnotes, Footnote 112, which states:

> Comey 1/7/17 Memorandum, at 1-2; Comey 11/15/17 302, at 3. Comey's briefing included the Steele reporting's unverified allegation that the Russians had compromising tapes of the President involving conduct when he was a private citizen during a 2013 trip to Moscow for the Miss Universe Pageant. During the 2016 presidential campaign, a similar claim may have reached candidate Trump. On October 30, 2016, Michael Cohen received a text from Russian businessman Giorgi Rtskhiladze that said, "Stopped flow of tapes from Russia but not sure if there's anything else. Just so you know . . . ." 10/30/16 Text Message, Rtskhiladze to Cohen. Rtskhiladze said "tapes" referred to compromising tapes of Trump rumored to be held by persons associated with the Russian real estate conglomerate Crocus Group, which had helped host the 2013 Miss Universe Pageant in Russia. Rtskhiladze 4/4/18 302, at 12. Cohen said he spoke to Trump about the issue after receiving the texts from

---

[1] Volume I is available at: https://www.justice.gov/storage/report_volume1.pdf
Volume II is available at: https://www.justice.gov/storage/report_volume2.pdf
Both volumes and the glossary are available at: https://www.justice.gov/storage/report_volume2.pdf

>Rtskhiladze. Cohen 9/12/18 302, at 13. Rtskhiladze said he was told the tapes were fake, but he did not communicate that to Cohen. Rtskhiladze 5/10/18 302, at 7.

Mueller Report, Vol. II at 27-28 n.112.

Mr. Rtskhiladze has two grievances about this footnote—first, he alleges that he was incorrectly described as a "Russian businessman," though he immigrated to the United States from the Republic of Georgia in the former Soviet Union,[2] see First Am. Compl. (FAC) ¶ 30 *Rtskhiladze v. Mueller*, No. 20-cv-1591-CRC, ECF No. 19-1, and second, that his text message was misquoted, because it should have read "[s]topped the flow of *some* tapes from Russia" rather than "[s]topped flow of tapes from Russia" and the text message should have been quoted in the context of additional text messages. *See* FAC ¶¶ 31-33. Mr. Rtskhiladze alleges that these two errors caused a myriad of harms: preventing him from serving as a *de facto* ambassador for U.S.-Georgia relations or becoming an "Honorary Consul" for the Georgian government, FAC ¶¶ 51-52; and that a laundry list of business dealings were cancelled, failed, or abandoned by him due to alleged reputational stigma, FAC ¶¶ 58-61.

## II.     Procedural History Concerning Mr. Rtskhiladze's Civil Case

In 2020, Mr. Rtskhiladze filed a civil suit against defendants the Department of Justice (DOJ) and Mr. Mueller, in his individual capacity. Compl., *Rtskhiladze v. Mueller*, No. 20-cv-1591-CRC, ECF No. 1. As amended, his complaint raised several theories under the APA, Fifth Amendment, and Privacy Act. FAC. Judge Cooper dismissed all of Mr. Rtskhiladze's claims because Mr. Rtskhiladze did not establish standing for his requests for injunctive and declaratory relief, did not plausibly allege that the publication of the material was intentional or willful as required for damages under the Privacy Act, conceded Special Counsel Mueller's arguments, and did not include a Fifth Amendment damages claim in his amended complaint. Mem. Op.,

---

[2] Mr. Rtskhiladze does not object to his description in the glossary of the Mueller report as an "Executive of the Silk Road Transatlantic Alliance, LLC who communicated with [Michael] Cohen about a Trump Tower Moscow proposal," Mueller Report, Vol. II at B-9, and "a business executive who previously had been involved in a development deal with the Trump Organization in Batumi, Georgia" and who "had pursued business ventures in Moscow," Mueller Report, Vol. I at 70.

4

*Rtskhiladze v. Mueller*, No. 20-cv-1591-CRC, ECF No. 32. Mr. Rtskhiladze appealed that decision to the D.C. Circuit. Notice of Appeal, *Rtskhiladze v. Mueller*, No. 20-cv-1591-CRC, ECF No. 34. Mr. Rtskhiladze now seeks Rule 60 relief from that judgment before Judge Cooper concerning only Count IV, his Privacy Act claim against DOJ for damages. Pl.'s Mot. Under R. 60(b)(2) & (6) for Relief Final J. (Pl.'s Rule 60 Mot.), *Rtskhiladze v. Mueller*, No. 20-cv-1591-CRC, ECF No. 37 (D.D.C. filed Jan. 19, 2022) (filed under seal in this docket).

## ARGUMENT

**I.     Mr. Rtskhiladze's Request for a Transcript, or to Publicly Disclose the Transcript, Should Be Denied.**

Mr. Rtskhiladze's primary objective appears to be obtaining a copy of the transcript of his grand jury transcript for purposes that he does not state. As described below, *infra* Part. I.B, such a request for the purpose of disclosing it to the public should be denied. To the extent that Mr. Rtskhiladze seeks a copy for personal use (*i.e.*, subject to nondisclosure conditions), such a request should also be denied because Mr. Rtskhiladze does not explain why he would need one, given that he has already taken undertaken a fulsome review.

**A.     Mr. Rtskhiladze's Request for a Transcript Should Be Denied Because He Does Not Demonstrate Need.**

As this Court has recognized, "a grand jury witness has no automatic right to a transcript of his or her testimony." *In re Grand Jury Investigation* (October 2019 GJ Decision), No. 18-gj-8 (BAH), slip op. at 13 (D.D.C. Oct. 30, 2019) (redacted version available at https://www.dcd.uscourts.gov/sites/dcd/files/18gj008%20Redacted%20Memorandum%20Opinion.pdf) (citing 1 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure (4th ed.) and other cases); *see also United States v. John Doe, Inc. I*, 481 U.S. 102, 125-26 (1987) (Brennan, J., dissenting) ("[T]he well settled rule that a witness is not entitled to a copy of his grand jury testimony on demand, even though he obviously was present in the grand jury room during the receipt of evidence, since a rule of automatic access would expose grand jury witnesses to

5

potential intimidation by making it possible for those with power over the witness to monitor his or her testimony." (citation omitted)).  Where, as here, a petitioner makes no showing of need, granting a transcript would be just such "automatic access."

In the previous months of litigation on this docket, Mr. Rtskhiladze has consistently maintained that access to his transcript alone would suffice to meet his litigation needs.  *See generally, e.g.*, App. Giorgi Rtskhiladze for Access to the Grand J. Trans. (Pet.'s App. for Access), ECF No. 2.  Mr. Rtskhiladze fails to explain why this has changed.  By drafting a Rule 60(b) motion, Mr. Rtskhiladze has apparently completed his previously stated objectives in accessing and reviewing his transcript.  And nothing in the Rule 60(b) motion or declaration contends that the review received was inadequate.  *See generally* Pl.'s Rule 60 Mot.  Given that Mr. Rtskhiladze received what he sought and made the filing he intended to make (albeit without the requisite permission), it is incumbent on him to explain any unmet need for greater access.  Mr. Rtskhiladze's motion for a transcript makes only the vague statement that "[w]hen the Petition was filed Petitioner and his counsel of course had not had the opportunity to review the transcript and, therefore, the initial request was more circumspect," Pet.'s Mot. at 1.  But Petitioner fails to explain why, after reviewing the transcript and drafting a detailed motion and declaration, he now needs a copy of the transcript.

Not only has Mr. Rtskhiladze failed to establish any need, but any release of a copy of a transcript—even subject to conditions—increases the risk of broader disclosure that would harm the Government's interests in grand jury secrecy, *infra* Part I.B.ii, including ongoing criminal and national security matters that arose from the Special Counsel's investigation and that the Special Counsel's Office referred for investigation and prosecution.

Comparing the facts here to the facts of a case where this Court *did* grant a copy of a

grand jury transcript further demonstrates that Mr. Rtskhiladze's motion should be denied.  In the October 2019 GJ Decision, the petitioner described the review process at the U.S. Attorney's Office as "wholly inadequate" and identified a number of specific issues preventing meaningful review.  For example, the petitioner himself could not review the transcript because of his detained status, which hindered discussions with his counsel.  Further, the transcript at issue was 900 pages long and thus difficult to adequately review under the designated procedures.  October 2019 GJ Decision, slip op. at 3, 19.  Here, the transcript is a small fraction of that length; both Mr. Rtskhiladze and his counsel reviewed the transcript together; and they were permitted to privately discuss the transcript and take unlimited notes.  No limitations were placed on the duration of their review.  Moreover, Mr. Rtskhiladze offered no complaints about the adequacy of his review at the time of the review, or prior to making his filing before Judge Cooper, or in his filing to Judge Cooper itself.

Because Mr. Rtskhiladze and his counsel have already had a more-than-adequate review of the transcript, during which they apparently took copious notes later used to produce purported verbatim quotations, it is unnecessary for them to also receive a copy of the transcript.  Disseminating a transcript beyond the existing custodians necessarily increases the risks of unauthorized disclosure, even where protective conditions are in place.  Accordingly, the Court should thus reject any request by Mr. Rtskhiladze to receive the transcript even with restrictions on access or dissemination.  Not only has he failed to articulate any need for the transcript, but he and his counsel have already struggled to comply with this Court's restrictions on the use of grand jury material.  Once disseminated, the transcript cannot be clawed back.

      **B.**    **Mr. Rtskhiladze's Request for Authorization for Unrestricted Possession of the Transcript Should Also Be Denied Because He Makes No Showing of Need, Much Less a Showing of Particularized Need.**

Mr. Rtskhiladze's request for public disclosure cannot—indeed, does not attempt to—

demonstrate a particularized need for the disclosure of his entire grand jury transcript. That standard requires a party seeking disclosure under Rule 6(e)(3)(E)(i) to make a "strong showing of a particularized need for grand jury materials," well beyond "mere relevance." *United States v. Sells Eng'g Inc.*, 463 U.S. 418, 443 (1983); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). Specifically, parties seeking grand jury material must show "[1] that the material they seek is needed to avoid a possible injustice in another judicial proceeding, [2] that the need for disclosure is greater than the need for continued secrecy, and [3] that their request is structured to cover only material so needed." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979); *see also United States v. Tajideen*, 319 F. Supp. 3d 445, 472-73 (D.D.C. 2018 ("The threshold for such a showing is very demanding, and the disclosure of grand jury information is exceedingly rare." (citation omitted)). Requests for wholesale disclosure of grand jury transcripts generally do not satisfy this requirement. *Douglas Oil*, 441 U.S. at 222.

While the D.C. Circuit has held that the particularized need standard is inapplicable when a witness seeks to *review* (but not receive a transcript) of their own testimony, *In re Grand Jury*, 490 F.3d 978, 988-89 (D.C. Cir. 2007), it did not address or reject the particularized need standard when the action contemplated is disclosure of grand jury material to the public, rather than to the witness alone.[3]

Here, Mr. Rtskhiladze fails to meet any of the three requirements for establishing particularized need. Indeed, even under a lower threshold balancing the petitioner's "need" against the Government's interest in secrecy, Mr. Rtskhiladze's petition would fail.

---

[3] Mr. Rtskhiladze incorrectly suggests that "[t]he Government has known all along that nothing in *In re Grand Jury* supports keeping the Declaration or any of the Rule 60(b) materials sealed." Pet.'s Mot. at 2. *In re Grand Jury* addressed only whether witnesses could access their testimony, not whether a witness can obtain an unrestricted copy of their transcript or whether a witness can otherwise publicly disclose grand jury material.

      i. <u>Disclosing the Transcript in Its Entirety Would Be Overbroad and Would Not Further the Interests of Justice.</u>

Mr. Rtskhiladze cannot meet the first or third requirements of particularized need as to his request to disclose the entirety of his grand jury transcript because such material is not needed to avoid an injustice and disclosure would be overbroad. As discussed below, *infra* Part I.B.ii, Mr. Rtskhiladze does not explain why the disclosure of *any* material to the public is needed, but there is certainly no reason to authorize disclosure of material that Mr. Rtskhiladze left out of his Rule 60(b) motion or accompanying declaration. Courts have been clear that, in exercising their discretion under 6(e)(E)(i), they should be mindful to authorize only such disclosure of grand jury information as is needed to achieve the interests of justice. *See Doe v. Cabrera*, 126 F. Supp. 3d 160, 165 (D.D.C. 2015) (granting a request for access to grand jury material after concluding that "[t]he defendant's request is circumscribed to what is necessary to guard against an injustice occurring in this case"). Mr. Rtskhiladze entirely fails to explain why he requires public disclosure of even that information included in his Rule 60(b) motion, much less other portions of the grand jury transcript.

      ii. <u>The Government's Interests in Secrecy Outweigh Mr. Rtskhiladze's Undescribed Interest in Disclosure.</u>

In balancing the Government's interests in grand jury secrecy against Mr. Rtskhiladze's interest in disclosing the transcript, Mr. Rtskhiladze fails to demonstrate a need for public disclosure of the transcript. Indeed, his past briefing uniformly states the opposite—that he does *not* need any public disclosure.[4] Mr. Rtskhiladze makes no real effort to explain why these past

---

[4] *See* Pet.'s App. for Access at 3 ("Applicant intends to submit an affidavit *under seal* in his district court suit . . . ." (emphasis added)); Mot. Take Notes during Review of Trans. (Notetaking Mot.) at 2, ECF No. 8 (same); Notetaking Mot. at 2 ("*Applicant understands the policy reasons surrounding the need to keep grand jury testimony out of the public domain and will destroy all notes taken during the review upon completion of Applicant's declaration.*" (emphasis in original)); Reply Supp. Notetaking Mot. at 1, ECF No. 10 ("[N]either the Applicant nor undersigned counsel intends to" "tell[] the world precisely what he was asked and what the witness answered"); Reply. Supp. Notetaking Mot. at 2 ("*To add a greater degree of control over notes taken during the review, the undersigned counsel will maintain control of them and will destroy them after the declaration is completed.*" (emphasis in original)).

statements are wrong. He states that his motion was informed by "guidance from the Court in the Order, the review of Petitioner's grand jury transcript, and further reflection upon the policy considerations addressed in *In re Grand Jury*, 490 F.3d 978 (D.C. Cir. 2007)," Pet.'s Mot. at 2 (footnote omitted), but does not specifically explain what need for public disclosure he discovered. The closest he comes is arguing that grand jury secrecy "serves only to leave Footnote 112 unchallenged while muzzling Petitioner's attempts to rehabilitate his reputation and mitigate the enormous harm visited upon him and his family." Pet. Mot. 3. Far from attempting to "muzzle" Mr. Rtskhiladze, however, the Government has no objection to him telling the world that he is Georgian, rather than Russian, or that he takes issue with Footnote 112. Indeed Mr. Rtskhiladze has done so throughout his civil lawsuit. Nor did the Government oppose Mr. Rtskhiladze's motion for limited access, with conditions, to review his grand jury transcript. Nor does the Government oppose this Court granting leave for Petitioner to file his Rule 60 papers, under seal, with Judge Cooper, *nunc pro tunc*. If Mr. Rtskhiladze had wanted to shout from the rooftops his own recollections of his grand jury testimony without using the Rule 6(e) process to seek access to the transcript from this Court, that was also his prerogative. But Mr. Rtskhiladze has not demonstrated a particularized need to publicize the transcript of his testimony, particularly given that the gravamen of his complaint in the civil lawsuit focuses on the (public) content of Footnote 112, and the contents of the grand jury transcript are at best tangentially related.

In contrast to the dearth of reasons favoring a need for disclosure, there are a number of reasons that the grand jury materials should not be publicly disclosed, in addition to general principles underlying of grand jury secrecy. *Douglas Oil*, 441 U.S. at 218 n.18.

10

When disclosure of witness testimony becomes commonplace it endangers the willingness of future witnesses to participate candidly before the grand jury. *See Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 566 n.11 (1983) ("[S]tringent protection of the secrecy of completed grand jury investigations may be necessary to encourage persons to testify fully and freely before future grand juries."); *see id.* (noting that even after the conclusion of a particular grand jury's investigation, "continued secrecy protects the reputations of the innocent and safeguards witnesses from possible retaliation"). Even where the request is brought by the witness, revealing grand jury testimony as a matter of course risks encouraging witness intimidation by creating the belief that a witness can obtain and disclose a copy of their testimony on demand, *cf. In re Grand Jury*, 490 F.3d at 989, ultimately harming witnesses and the Government's ability to elicit truthful testimony.

Furthermore, revealing the entire grand jury transcript verbatim to the public will reveal the work product and investigatory strategy of the prosecutors, including their methods of questioning and focus, in a recent investigation that produced still-open cases. Similar information has been held to be exempt from public disclosure under the Freedom of Information Act because disclosure would divulge the attorney work product of the prosecutors. *See Leopold v. DOJ*, 487 F. Supp. 3d 1, 10-15 (D.D.C. 2020) (upholding the withholding of FD-302s relating to Special Counsel Mueller's investigation under FOIA Exemption 5 because divulging them would reveal attorney work product). Publication of the transcript itself, moreover, is different in kind from the traditional right of a witness to "stand on the courthouse steps" and describe their testimony to the public. *In re Grand Jury*, 490 F.3d at 989. When witnesses speak from their own recollections, those recollections will necessarily be filtered by their perceptions and do not constitute any sort of official disclosure. The release of an official transcript, by contrast,

will provide a precise, exhaustive, and accurate roadmap of the Government's prosecutorial and investigative strategy. Finally, revealing the grand jury transcript to the public may implicate the personal privacy interests of other individuals named or referred to in the transcript.

Here, public disclosure may therefore harm to ongoing proceedings and investigations related to the Special Counsel's investigation, many of which remain open. *See, e.g.*, *United States v. Internet Res. Agency, LLC* (D.D.C. No. 1:18-cr-00032); *United States v. Netyksho* (D.D.C. No. 1:18-cr-00215); *United States v. Kilimnik* (D.D.C. No. 1-17- cr-00201); *United States v. Khusyaynova* (E.D.V.A. No. 1:18-mj-00464); *United States v. Morenets* (W.D. Pa. 2:18-cr-00263); *cf.* Declaration of Vanessa Brinkman ¶¶ 44-45, *EPIC, v. DOJ*, Case No. 1:19-cv-810, ECF No. 54 (D.D.C. 2019); Mueller Report, Appendix D. The defendants in some of these prosecutions remain fugitives, and these matters therefore remain open.

II. **Mr. Rtskhiladze's Request to Publicly Disclose the Grand Jury Material Contained in His Rule 60(b) Motion Should Likewise Be Denied.**

In addition to seeking a copy of his transcript for unstated purposes, Mr. Rtskhiladze seeks authorization to publicly disclose the grand jury material contained in his Rule 60(b) motion. Like his request to disclose the transcript, Mr. Rtskhiladze fails to make the required showing of particularized need to justify the disclosure of grand jury material, and also fails under the lower threshold balancing the petitioner's interests in disclosure against the Government's interest in grand jury secrecy. Much of the previous analysis relating to his request for the entire transcript, *supra* Part I.B, is applicable here. Mr. Rtskhiladze's declaration accompanying his Rule 60(b) motion contains numerous purported verbatim quotations of questions and answers from his grand jury testimony, presumably from notes taken during his review, for which he provides no explanation of need for public disclosure. In addition to the

arguments stated above, there are additional reasons to deny public disclosure of the grand jury information contained in the Rule 60(b) motion.

                i.    Disclosure Would Not Avoid "Injustice" Because Mr. Rtskhiladze's Rule 60(b) Arguments Are Meritless.

While the grand jury material contained in Mr. Rtskhiladze's Rule 60(b) motion is, at least, material that he judged relevant to his motion, its disclosure is not necessary to avoid "injustice in another judicial proceeding," *Douglas Oil*, 441 U.S. at 222, because Mr. Rtskhiladze's Rule 60(b) arguments lack merit on their face. *Cf. Tajideen*, 319 F. Supp. 3d at 472-73 (denying a request for grand jury material because the court concluded that the documents "do not indicate that the government engaged in misconduct in securing the defendant's extradition"); *cf. also United States v. Wright*, 234 F. Supp. 3d 45, 47-48 (D.D.C. 2017) (noting that "[t]he threshold for such a showing [of particularized need for grand jury testimony] is very demanding" and "the disclosure of grand jury information is exceedingly rare" (quotation marks and citation omitted)); *United States v. Naegele*, 474 F. Supp. 2d 9, 10 (D.D.C. 2007) (requiring a "factual basis" above "conclusory or speculative allegations of misconduct" for a defendant to access grand jury testimony).

Mr. Rtskhiladze's Rule 60(b) filing cannot overcome the numerous problems that Judge Cooper already identified when dismissing his Privacy Act claim contained in Count IV. Such a claim requires him to show "that the agency acted in a manner which was intentional or willful" and that, as a result, he suffered "actual damages." 5 U.S.C. § 552a(g)(4). Judge Cooper found that the minor misstatements in Footnote 112 are not plausibly connected to the claimed harms: "it is simply not plausible that anyone would have ended a business relationship with Rtskhiladze over what appears to be simply an error regarding his nationality." *Rtskhiladze v. Mueller*, No. 20-cv-1591 (CRC), 2021 WL 3912157, at *9 (D.D.C. Sept. 1, 2021), *appeal filed*, No. 21-5243 (D.C. Cir. Oct. 29, 2021). He further found that any inaccuracies in Footnote 112 are "not plausibly chalked up to intentional malfeasance on behalf of DOJ or Special Counsel Mueller's team. The much more obvious explanation is a mere drafting error." *Id.* at *14.

13

Mr. Rtskhiladze's references to the content of his grand jury testimony, to show that the drafters of Footnote 112 had access to accurate facts, would not suffice to show intentional or willful misconduct, as required by the Privacy Act. That is particularly true given that Mr. Rtskhiladze is identified elsewhere in the Mueller report as "a U.S.-based executive of the Georgian company," Mueller Report, Vol. I at 70 n.313, as well as identified as Georgian in the Senate's Report, Volume V of the Senate Select Committee on Intelligence's Report on Russian Active Measures Campaigns and Interference in the 2016 Election (S. Rep. No. 116-XX) at 658 n.4271, https://www.intelligence.senate.gov/sites/default/files/documents/report_volume5.pdf.

Much of Mr. Rtskhiladze's Rule 60(b) motion is based on a fanciful thread about alleged conflicts of interest stemming from the prosecutor who questioned him having had earlier associations with Hillary Clinton. Pl.'s Rule 60 Mot. at 13-19. This argument is speculative and implausible. Why the prosecutor's alleged past employment by Hillary Clinton would have any effect on whether the drafters of Footnote 112 referred to Mr. Rtskhiladze as a Russian versus Georgian business is difficult to fathom. In any event, Mr. Rtskhiladze's entire theory is based on nothing more than the general fact of this prosecutor's involvement in his testimony. It does not require any specific information from his grand jury transcript, and thus his desire to litigate this new theory does not justify compromising grand jury secrecy through public disclosure.

    ii.    <u>The Government's Interests in Grand Jury Secrecy Outweigh Mr. Rtskhiladze's Interests in Disclosure, Particularly Because the Government Does Not Oppose The Disclosure of the Information in Mr. Rtskhiladze's Rule 60 Motion to Judge Cooper Under Seal.</u>

For all of the previously described reasons, *supra* Part I.B.ii, the Government's interest in grand jury secrecy outweighs Mr. Rtskhiladze's undescribed interest in public disclosure.

Even reading Mr. Rtskhiladze's motion generously and assuming that he intended to assert an interest in litigating his Rule 60(b) motion, *public* disclosure of the material in that motion is not warranted. While Mr. Rtskhiladze violated this Court's prior order by filing his Rule 60(b) motion on the public docket, the Government does not object to that motion being

adjudicated. (We object here only to his receipt of a transcript and to public disclosure any grand jury materials.) It may be feasible for Mr. Rtskhiladze to proceed on his motions before Judge Cooper while the grand jury material remains under seal. The use of redaction on the public docket to protect grand jury information has ample precedent. *See In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1074 (D.C. Cir. 1998) ("The use of *in camera* review in proceedings collateral to a grand jury investigation is by no means novel."); Fed. R. Crim. P. 6(e)(6) ("Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury."). And, there is no common law right of access to grand jury material. *In re Leopold to Unseal Certain Elec. Surveillance Apps. & Ords.*, 964 F.3d 1121, 1130 (D.C. Cir. 2020), *remanded*, 2020 WL 7481037 (D.D.C. Dec. 17, 2020); *see also In re Motions of Dow Jones & Co.*, 142 F.3d 496 (D.C. Cir. 1998). Such a proceeding here would not need to be *in camera* or *ex parte* given that Mr. Rtskhiladze's Rule 60 motion is based on the review and notes of Mr. Rtskhiladze and his counsel. Accordingly, Mr. Rtskhiladze's interest in public disclosure of the grand jury material in his Rule 60(b) motion or accompanying declaration is negligible because the denial of authorization for public disclosure would work no prejudice on his ability to pursue even his meritless motion in the Privacy Act suit before Judge Cooper.

## CONCLUSION

For the previously stated reasons, Mr. Rtskhiladze's motion should be denied.

Dated February 3, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch

*/s/ Rebecca M. Kopplin*
REBECCA M. KOPPLIN
Trial Attorney (California Bar No. 313970)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW Washington, DC 20005
Telephone: (202) 514-3953
Facsimile: (202) 616-8470
E-mail: rebecca.m.kopplin@usdoj.gov

*Counsel for the United States*