IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEALED, | ) )  ) ) ) |
| v. | ) No. 1:21-gj-00048 (BAH) (SEALED) ) ) |
| SEALED. | ) ) |

APPLICANT:   Giorgi Rtskhiladze
32 Old Bethel Road
Newtown, CT 06470

RELATED CASE:   *Rtskhiladze v. Mueller, et al.*, No. 1:20-cv-1591 (CRC)

PETITIONER'S REPLY TO THE GOVERNMENT'S OPPOSITION
TO THE MOTION TO UNSEAL ALL RULE 60(b) MATERIALS AND FOR
THE UNRESTRICTED PRODUCTION OF HIS GRAND JURY TRANSCRIPT

Jerome A. Madden
THE MADDEN LAW GROUP PLLC
1455 Pennsylvania Ave., NW, Suite 400
Washington, DC 20004
(202) 349-9836
JMadden@TheMaddenLawGroup.com
District of Columbia Bar No. 272260
*Counsel for Petitioner*

February 7, 2022

**TABLE OF CONTENTS**

Introduction ..................................................................................................................................1

Argument....................................................................................................................................1

    1.    The D.C. Circuit Has Rejected the "Particularized Need" Standard in this Context..................................................................................................1

    2.    DOJ—Not Petitioner—Has the Burden of Persuasion in This Context .................2

    3.    DOJ's Secrecy Argument Also Was Rejected by the D.C. Circuit ........................2

    4.    The Interests of Justice Favor Petitioner ................................................................4

    5.    DOJ Protests Too Much ......................................................................................... 4

    6.    DOJ's Argument Regarding the Nature of Petitioner's Privacy Act Claim For Damages Is Entirely Self-Serving ............................................... 4

Conclusion..................................................................................................................................9

i

# TABLE OF CONTENTS

**Cases**

*Doe v. Roman Catholic Diocese of Greensburg*, No. 20-cv-1750, 2022 WL 203455
    (D.D.C. 2022) ........................................................................................................................ 6

D*oes v. U.S. Dept. of Labor*, 451 F. Supp. 2d 156 (D.D.C. 2006) ................................................. 5

*Friedman v. Sebelius*, 672 F. Supp. 2d 54 (D.D.C. 2009) ............................................................. 2

*Grynberg v. BP P.L.C.*, 205 F. Supp. 3d 1 (D.D.C. 2016) .............................................................. 2

*In re Grand Jury*, 490 F.3d 978 (D.C. Cir. 2007) ................................................................. 1,2,3,4

*In re McCormick & Company, Inc.*, 316 F. Supp. 3d 455 (D.D.C. 2018) ...................................... 2

*In re Sealed Motion*, 880 F.2d 1367 (D.C. Cir. 1989) ................................................................... 2

*In re U.S. OPM Data Sec. Breach Lit.*, 982 F.3d 42 (D.C. Cir. 2019) ........................................... 5

*Johnson v. Greater Southeast Community Hosp. Corp.,* 951 F.2d 1268 (D.C. Cir. 1991) .......... 2

*Tah v. Global Witness Publishing, Inc.*, 991 F.3d 231 (D.C. Cir. 2021) ....................................... 5

*Wilkerson v. Shinseki*, 606 F.3d 1256 (10th Cir. 2010) ................................................................. 5

**Rules**

Fed. R. Civ. P. 60(b) ....................................................................................................................... 4

Fed. R. Crim. P. 6(e)(3)(E)(i) ......................................................................................................... 3

Fed. R. Cim. P. 9 ............................................................................................................................ 6

**Introduction**

The Department of Justice's response to the Motion to Unseal is dead on arrival. DOJ has it exactly backwards when it argues that Petitioner bears the burden of persuasion. In this context, a party seeking to keep documents under seal has the burden. Moreover, DOJ's arguments about Petitioner's failure to demonstrate "a particularized need" and the need for secrecy were flatly rejected in *In re Grand Jury*, 490 F.3d 978 (D.C. Cir. 2007). DOJ is otherwise wrong on the merits because the interest of justice does not favor DOJ, DOJ protests too much in arguing that Petitioner's action is meritless while at the same time stridently trying to keep the evidence under seal, and DOJ's immaterial statements about the merits of Petitioner's civil action are entirely self-serving.

The Court's Minute Order, dated January 26, 2022, denied the Motion to Unseal to the extent it seeks to unseal the Rule 60(b) materials and directed that such a motion be directed to the presiding judge in the related action. Accordingly, this Reply does not address issues related to those materials.

**Argument**

    **1.    The D.C. Circuit Has Rejected the "Particularized Need" Standard in this Context**.

DOJ argues that Petitioner has failed to "demonstrate a particularized need." DOJ Resp. at 5-9. But the D.C. Circuit has categorically rejected the "particularized need" standard where the witness seeks access to the witness's own grand jury transcript. "For this reason, the Supreme Court's 'particularized need' standard, which the Court crafted to deal with ***third-party*** requests for secret transcripts of other witnesses' testimony, does not apply in this ***first-party context***." *In re Grand Jury*, 490 F.3d at 989 (Emphasis original).

### 2. DOJ—Not Petitioner—Has the Burden of Persuasion in This Context.

Because the "particularized need" standard does not apply here, the burden falls upon DOJ to rebut the presumption against keeping grand jury transcripts under seal. As the D.C. Circuit explained long ago:

> Whether a grand jury witness is entitled to his own grand jury testimony has sparked conflicting rulings and observations in the federal courts. The Supreme Court has not passed on this precise question. We conclude that because the right to secrecy in grand jury proceedings belongs to the grand jury witness, a grand jury witness named in an independent counsel's report is ***entitled to a transcript of his own testimony absent a clear showing by the government that other interests outweigh the witness's right to such transcript***.

*In re Sealed Motion*, 880 F.2d 1367, 1370-71 (D.C. Cir. 1989) (Emphasis added). DOJ has offered no legitimate reason why Petitioner's transcript should be sealed.[1]

### 3. DOJ's Secrecy Argument Also Was Rejected by the D.C. Circuit.

DOJ argues that its "interest in secrecy outweigh" Petitioner's interests. DOJ Resp. at 9-12. But as the D.C. Circuit observed in *In re Grand Jury* the privilege regarding secrecy in the grand jury context belongs to the witness—not the government:

> The witnesses themselves are not under an obligation of secrecy, however. As Wigmore explained and as Rule 6 provides, the theory of grand jury secrecy is that "the witness is guaranteed against compulsory disclosure; the ***privilege*** must therefore be ***that of the witness***, and rests upon his consent."

---

[1] In this context, the usual rules apply about the burden of placing documents under seal. *Grynberg v. BP P.L.C.*, 205 F.Supp.3d 1, 3 (D.D.C. 2016). "[A] party seeking to seal court documents must 'come forward with specific reasons why the record, or any part thereof, should remain under seal.'" *Friedman v. Sebelius*, 672 F.Supp.2d 54, 58 (D.D.C. 2009) (quoting *Johnson v. Greater Southeast Community Hosp. Corp.,* 951 F.2d 1268, 1278 (D.C. Cir. 1991); *see In re McCormick & Company, Inc., Pepper Products Marketing and Sales Practices Litigation*, 316 F. Supp. 3d 455, 464 (D.D.C. 2018).

*Id*. at 985 (Emphasis original). The court of appeals went on to categorically reject DOJ's arguments about secrecy. "[T]he secrecy rationale does not apply when the witness seeks access to a transcript of ***his or her own*** grand jury testimony." *Id.* at 988 (Emphasis original). The court explained that "[p]reventing a third party from reviewing a witness's grand jury testimony is essential to guarantee secrecy to witnesses; preventing the witness from reviewing the witness's own testimony is entirely unnecessary to guarantee secrecy to witnesses." *Id.* at 988. The court elucidated:

> A grand jury witness is legally free to tell, for example, his or her attorney, family, friends, associates, reporters, or bloggers what happened in the grand jury. For that matter, the witness can stand on the courthouse steps and tell the public everything the witness was asked and answered. … The secrecy rules therefore are no justification for denying witnesses access ***to their own transcripts***.

*Id*. at 989 (Emphasis added).

DOJ makes a series of meritless arguments about the need for secrecy. DOJ argues that if the disclosure of a witness's testimony becomes commonplace it endangers the willingness of future witnesses to participate candidly before the grand jury. DOJ Resp. at 11. But the issue only arises where Fed. R. Crim. P. 6(e)(3)(E)(i) applies, *i.e.*, where the witness is involved in related litigation. And nothing restricts grand jury witnesses from telling the world what was asked and answered in their appearance before the grand jury.

DOJ's argument that unrestricted release of the grand jury transcript will reveal attorney-work product is specious. DOJ Resp. at 11. But if a grand jury witness can tell the world what went on in questioning before the grand jury, then a witness already has the ability to disclose what little work product may be in play. DOJ also argues that unrestricted release of the grand jury transcript will harm ongoing proceedings and investigations. DOJ Resp. at 12. But none of the matters cited have anything to do with the subject of Footnote 112.

3

### 4. The Interests of Justice Favor Petitioner.

DOJ makes the misplaced argument that the interests of justice favor nondisclosure. DOJ Resp. at 9. But, as discussed above, DOJ—not Petitioner—bears the burden of persuasion. The Privacy Act claim is based on the defamation in Footnote 112 that derailed Petitioner's career. DOJ should not be permitted to publish Footnote 112 without the necessary redactions to protect the privacy interests of nontargets—which the Attorney General announced DOJ would—while at the same time aggressively opposing the public disclosure of the grand jury transcript.

### 5. DOJ Protests Too Much.

DOJ's arguments about keeping the transcript under seal conflict with the maxim that the best disinfectant is sunlight. It refuses to correct the defamation in Footnote 112 and at the same time in its publicly filed briefs it belittles the professional and personal harm it triggered. At the same time DOJ stridently seeks to keep evidence from seeing the light of day. In Footnote 112 DOJ has given the world its interpretation of Petitioner's grand jury testimony. An examination of the transcript shows that Footnote 112 is wrong. Petitioner cannot effectively show the world that Footnote 112 is wrong without free access to his transcript. DOJ has no legitimate reason for preventing Petitioner from using his transcript to restore his reputation. If DOJ believes the civil action lacks merit, then it should not object to making Petitioner's grand jury transcript public because presumably doing so will vindicate its position.

### 6. DOJ's Argument Regarding the Nature of Petitioner's Privacy Act Claim for Damages Is Entirely Self-Serving.

The impropriety of dismissing the case on the pleadings will be decided by the D.C. Circuit—not here—unless the district court grants Petitioner's Rule 60(b) Motion. DOJ's views of the merits, therefore, are immaterial. To the extent relevant here, DOJ's arguments are myopic at best. DOJ Resp. at 12-14.

The district court found that Footnote 112 was both misleading and inaccurate and harmed Petitioner.[2]  Nevertheless, the district court dismissed the claim for damages under the Privacy Act on the ground that the Amended Complaint failed to plausibly plead that the inaccurate and misleading content of Footnote 112 was "intentional or willful."[3]  "Intentional or willful" does not require pleading mendacious conduct.  The Privacy Act requires only that the action taken in preparing an inaccurate and or misleading "record" was done with culpability slightly greater than gross negligence, *i.e.*, that action was taken in ***reckless disregard of the privacy interest of the plaintiff***.[4]

The Amended Complaint includes detailed allegations reciting how the contents of Footnote 112 are unsupported.[5]  Footnote 112 insinuates that the purported scandalous tapes mentioned in the Steele Dossier were in the possession of the Crocus Group, a Russian real estate conglomerate.  It further implies that plaintiff cavorted with the owner of the group to assure the tapes did not become public.[6]  The Amended Complaint alleges that the special

---

[2] Memorandum Opinion (Docket Entry (DE) 32 at 19-20).  That is all a claimant needs to prove to require the Government to correct a flawed record.  Despite these conclusions, the district court dismissed Petitioner's claims for equitable relief holding that no prospective relief is possible, a profoundly flawed conclusion.

[3] *Id*. at 27-29.

[4] *In re U.S. Office of Personnel Management Data Security Breach Litigation*, 982 F.3d 42, 62-63 (D.C. Cir. 2019); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010) (stating that reckless disregard for the rights of a plaintiff constitutes "intentional or willful" conduct under the Privacy Act); *Does v. U.S. Dept. of Labor*, 451 F. Supp. 2d 156, 177 (D.D.C. 2006).

[5] Amended Complaint ¶¶ 21-23, 28-42 (DE 19-1 at 13-18).

[6] Defamation by implication is actionable so long as a plaintiff can show that the public understood the defaming implications.  *Tah v. Global Witness Publishing, Inc.*, 991 F.3d 231 (D.C. Cir. 2021) (stating that in a case alleging defamation by implication under the District of

prosecutors knew that there was no connection between Petitioner and the Steele Dossier, that Petitioner had no contact with anyone associated with the Crocus Group about the purported tapes, and that Petitioner had no knowledge about the whereabouts, existence, or authenticity of such tapes.[7]

At the pleading stage those allegations are sufficient to defeat a motion to dismiss particularly in a case like this one, where obtaining information sufficient to plead the required culpability is difficult because the needed facts are in the sole possession of the defendant. Indeed, even under the stringent pleading requirements for a fraud claim under Fed. R. Civ. P. 9, detailed allegations of intent are not required where the needed facts are in the sole possession of the defendant.[8] Getting at the circumstances leading to this reckless behavior would require discovery. Perhaps that is why until the case was prematurely dismissed, DOJ misled Petitioner in his attempt to review his grand jury testimony.[9]

The allegations in the Amended Complaint are confirmed by Petitioner's grand jury transcript. Petitioner's Declaration summarizing his testimony states that the Mueller

---

Columbia law, courts are charged with responsibility of determining whether the challenged statement(s) can convey a defamatory meaning).

[7] Amended Complaint ¶¶ 21-42 (DE 19-1 at 11-18).

[8] *Doe v. Roman Catholic Diocese of Greensburg*, No. 20-cv-1750, 2022 WL 203455, at *17 (D.D.C. 2022).

[9] Petitioner requested the production of his grand jury transcript at the time he filed the Amended Complaint and DOJ misled Petitioner to believe that DOJ was considering the request. Had the case not been dismissed Petitioner would have received a copy of his grand jury transcript through discovery. The transcript would have revealed to Petitioner's counsel that the lead prosecutor took an active role in questioning Petitioner even though she had a shocking conflict of interest. That conflict gave the lead prosecutor the means and motive to imply in Footnote 112 that the compromising tapes existed and that a "Russian businessman" took steps to suppress them.

prosecutors knew that everything Petitioner knew about the purported compromising tapes he heard from a friend.  The prosecutors knew that the friend called him at his home in Connecticut to relate that he had overheard a person while dining at an adjacent table bragging about tapes of Donald Trump.  The prosecutors knew that Petitioner took no actions to attempt to verify the rumor.  The prosecutors also knew Petitioner related this rumor to Michael Cohen because he was working with the Trump Organization on a project to build a Trump Tower in the Republic of Georgia, his native country.[10]  They knew that after the *Access Hollywood* tapes were made public—several weeks before the text exchanges between Petitioner and Cohen—that there was widespread speculation that there might be other damaging tapes surfacing.[11]  And the prosecutors knew that the public—including Petitioner—did not become aware of the Steele Dossier until several weeks after the 2016 presidential election.

      Simply put, Footnote 112 cannot be squared with Petitioner's transcript.  Further, the review of Petitioner's grand jury transcript revealed that the lead prosecutor, Jeannie Rhee, took an active part in the questioning of Petitioner.[12]  A background check after reviewing the transcript revealed that the lead prosecutor had a massive and disqualifying conflict of interest based upon her personal, political, and professional ties to the 2016 Democratic presidential candidate Hillary Clinton.[13]

---

[10] Amended Complaint ¶ 21 (DE 19-1 at 11).

[11] *Id.* ¶¶ 37-38 (DE 19-1 at 11).

[12] GR Dec. ¶¶ 2, 19-27 (Jan. 19, 2022) (Under Seal).

[13] Pet. Memo. in Support of Rule 60(b) Motion at 15-16 (Under Seal).  Further, the lead prosecutor withheld this conflict from the Special Counsel when she was appointed to the Mueller team.  *Id.* at 16.

It does not require a leap in logic to conclude that the lead prosecutor—whether wittingly or unwittingly—violated DOJ policy of protecting the privacy interests of nontargets when she drafted Footnote 112 in reckless disregard for the privacy interests of Petitioner and then failed to see that the defamation was redacted.  The lead prosecutor knew that a statement in the Mueller Report implying that compromising tapes—authentic or not—existed and were being suppressed in Russia would confirm the narrative that emerged during the 2016 presidential campaign about Trump's pre-election contacts with Russian officials.  And the lead prosecutor knew that from a political perspective, Footnote 112 would hurt President Trump's chances for reelection the following year which would please former Candidate Clinton.  These types of conflicts of interest are why the prosecutorial ethics rules are so rigorous.[14]

There is no need to speculate about how the public understood the implications of Footnote 112.  As the Amended Complaint alleges in detail and as further detailed in Petitioner's Declaration filed with his opposition to DOJ's motion to dismiss, the damage to Petitioner caused by Footnote 112 was swift and cataclysmic.[15]  The publication of an unredacted Footnote 112—contrary to DOJ's stated policy to protect the privacy interests of nontargets—imposed immediate tangible and dramatic negative changes in Petitioner's status as an American businessman.  Petitioner had dedicated is adult life to fostering positive relations between his adopted country, the United States, and his native country Georgia—something vital to both countries in deterring Russian aggression.

---

[14] *See* Pet. Mem. in Support of Rule 60(b) Motion at 13-14 (Under Seal)

[15] Amended Complaint ¶¶ 60-61 (DE 19-1 at 24-25).

**Conclusion**

For these reasons and those in the Memorandum in Support of this Motion, Petitioner respectfully requests that the Motion be granted, that DOJ be directed to produce Petitioner's grand jury transcript without restriction upon its use.

                                        Respectfully submitted,

                                        _____
                                        Jerome A. Madden
                                        THE MADDEN LAW GROUP PLLC
                                        1455 Pennsylvania Ave., NW, Suite 400
                                        Washington, DC 20004
                                        (202) 349-9836
                                        JMadden@TheMaddenLawGroup.com
Dated:  February 7, 2022            District of Columbia Bar No. 272260

**CERTIFICATE OF SERVICE**

    I, Jerome A. Madden, hereby certify that on February 7, 2022, I caused to be served using the CM ECF system a copy of the foregoing Reply upon:

Rebecca M. Kopplin
U.S. Department of Justice
Civil Division
1100 L Street, N.W.
Washington, D.C. 20005

David W. Inkeles
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044

                                                                       _____

                                                                       Jerome A. Madden