## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| SEALED, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 1:21-gj-00048 (BAH) (SEALED) |
| | ) | |
| | ) | |
| SEALED. | ) | |
| _____ | ) | |

APPLICANT:     **Giorgi Rtskhiladze**
                       **32 Old Bethel Road**
                       **Newtown, CT 06470**


RELATED CASE:   *Rtskhiladze v. Mueller, et al.*, No. 1:20-cv-1591 (CRC)


## PETITIONER'S REPLY TO THE GOVERNMENT'S
## OPPOSITIONTO THE MOTION FOR RECONSIDERATION


Jerome A. Madden
THE MADDEN LAW GROUP PLLC
1455 Pennsylvania Ave., NW, Suite 400
Washington, DC 20004
(202) 349-9836
JMadden@TheMaddenLawGroup.com
District of Columbia Bar No. 272260
*Counsel for Petitioner*


February 28, 2022

**TABLE OF CONTENTS**

Introduction .................................................................................................................1

Argument ....................................................................................................................3

    A.    The Standard of Review for Interlocutory Decisions Is "As Justice Requires" .....3

    B.    Under *In re Sealed Motion*, Where the Government Fails to Carry Its Initial Burden of Persuasion, the Witness Is Entitled to Their Transcript .......................4

        1.    Absent a Persuasive Reason for Not Providing the Transcript, the Witness Has No Obligation to Give *Any* Reason for the Request .............4

        2.    The D.C. Circuit in *In Re Grand Jury* Did Not Weaken the Holding in *In re Sealed Motion* ...................................................................................6

        3.    The Fact that *In re Sealed Motion* Involved the Government in Ethics Act is Immaterial to Its Holding.................................................................6

        4.    The Government—Not Petitioner—Is Seeking an "Automatic" Rule........7

    C.    Where the Government Puts Otherwise Confidential Information into the Public Domain, It Is No Longer "Secret" .......................................................7

        1.    The Senate Select Committee on Intelligence—Relying upon Mueller Evidence—Released All Material Facts into the Public Domain ..............7

        2.    A Comparison of the Senate Report and Petitioner's Declaration Confirms that the "Information Is Widely Known" .................................8

    D.    Simply Pointing to Cases Related to the Mueller Investigation Does Not Meet the Government's Burden of Persuasion...........................................................10

    E.    None of the Policy Considerations Announced by the Supreme Court Are Applicable ...........................................................................................................11

    F.    Even If a Persuasive Reason for Unrestricted Disclosure Were Required, Leveling the Playing Field in this Defamation Case Is that Reason....................12

    G.    The Callow and Cavalier Attitude of the Government Is Revealed in its Tone-Deaf Comment that He Should Take Out an Ad in the *New York Times* ....12

H.    The Government Does Not Oppose the Alternative Request of Requiring
It to File the Transcript under Seal in the Related Case But Seeks to Add
Inappropriate Conditions ......................................................................................13

Conclusion ...........................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Firestone v. Firestone*, 676 F.3d 1205 (D.C. Cir. 1996) ...............................................................4

*In re Grand Jury*, 490 F.3d 978 (D.C. Cir. 2007) ....................................................................... 3-7

*In re North*, 16 F.3d 1234 (D.C. Cir. 1994) ...............................................................................8

*In re Sealed Motion*, 490 F.2d 978 (D.C. Cir. 1989) ................................................................ 3-7

*Shepherd v. American Broadcasting Co.*, 62 F.3d 1469 (D.C. Cir. 1995) ..................................14

*United States v. Proctor & Gamble Co.,* 356 U.S. 677 (1958) ..................................................11

*Williams v. Savage*, 569 F. Supp.2d 99 (D.D.C. 2008) ...............................................................3

**Rules**

Fed. R. Civ. P. 59(e) ....................................................................................................................3

Fed. R. Civ. P. 60(b) ...................................................................................................................8

Fed. R. Cr. P. 6(e) ....................................................................................................................2,8

## Introduction

1.  Requests for reconsideration of an interlocutory order are appropriate "as justice requires."  When controlling caselaw is applied properly, DOJ failed to come forward with any persuasive reason why the transcript should not be released.  Under *In re Sealed Motion*, Petitioner has a ***general right*** to a copy of his transcript absent a persuasive reason by DOJ not to release it.  This is consistent with the fact that it is the witness's privilege.

The Government's characterization of the test announced in *In re Sealed Motion* as a simple balancing test is incomplete.  Under that case, the Government has the initial burden of coming forward with a persuasive reason why the transcript should not be released.  ***Absent the Government meeting its burden of persuasion, the witness is under no obligation to provide a reason in support of disclosure.***  Here, the Government has put forward three reasons for not publicly disclosing the transcript: secrecy, interference with ongoing Mueller proceedings, and preventing witness intimidation.  None has merit.

2.  At the most basic level of this dispute is the unalterable reality that all material facts in Petitioner's transcript were made public in the Report of the Senate Select Intelligence Committee on Russian interference in the 2016 presidential election.  The Senate Report was released long after the redacted Mueller Report was made public and Petitioner's career was highjacked.[1]  The Senate Report had access to and relied upon the evidence generated by the Mueller investigation, as is revealed in its footnotes.  The secrecy argument, therefore, fails

---

[1] The district court (wrongly) dismissed the related case based upon Petitioner's argument that the Senate Report relies upon the same information in Mueller's possession and did not defame Petitioner.  That reasoning is fatally flawed, *first*, because the Senate Report was made public long after the defamation in Footnote 112 was released and, *second*, the basis of the defamation is the defamatory implications of the footnote.  There is no serious debate that Footnote 112 defamed Petitioner because of the immediate and adverse coverage of it upon its release.  Closing the barn door after the defamatory horse has galloped away cannot erase the defamation.

because all material facts in the transcript have been disclosed by the Government.  ***Facts in a grand jury transcript are no longer "secret" when the Government itself places them in the public domain***.  In that circumstance Rule 6(e) does not apply.

3.  The argument that release would impact negatively ongoing proceedings related to the Mueller investigation fails as well.  The Government does no more than to state nakedly that release of Petitioner's transcript will harm those proceedings.  The Government does not even articulate what the issues are or bother to tell the court how interference would occur.  Just saying something does not make it so and the Government has failed to fulfill its initial burden of persuasion.  And the Governments statement that the release of Petitioner's grand jury transcript would "encourage witness intimidation" is baseless.

The policy arguments put forward by the Government are the same ones rejected by the D.C. Circuit in *In re Grand Jury*.  Although the court of appeals stopped short of deciding that a grand jury witness is entitled to a copy of their transcript, this Court should take that next step under these unique circumstances.  Disclosure would avoid what in effect would be allowing the Government to defend a defamation case based on selective publication of misleading parts of Petitioner's testimony while requiring him to challenge the conduct in a secret trial.  The parties ought to be put on the same footing in the court of public opinion, where the Government has failed to put forward a persuasive reason to the contrary.

4.  Even if Petitioner had a burden to provide a persuasive reason why the transcript should be released into the public domain, he has repeatedly done so.  Contrary to DOJ's argument, Petitioner has maintained from the inception that as a matter of fundamental fairness there is a compelling reason why the transcript should be released.  The Government was not required to release the Mueller Report.  In choosing to do so, Attorney General Barr expressly

acknowledged the damage the Report could do to nontargets of the investigation. He announced

that DOJ would redact information that could harm the reputations of nontargets. It did not do so

in Petitioner's case. The Government should not be permitted to destroy a U.S. citizen's career

and then retain the evidence that would counter the harm it has done. This situation allows the

Government to litigate its wrongdoing in private, something anathema to judicial transparency.

And providing the transcript under these unique set of facts would hardly create an "automatic"

right as the Government puts it. The Government is the party seeking a rule of "automatic"

denial of Petitioner's general right to his transcript, a position rejected in both *In re Grand Jury*

and *In re Sealed Motion*.

5. The Government does not oppose a direction by the Court for DOJ to file the

transcript in the related case under seal but seeks to impose two inappropriate conditions (i) that

it should be up to Judge Cooper to decide whether its filing would be beneficial and (ii)

Petitioner and his counsel should be denied access. ***First***, Petitioner is responsible for

prosecuting his claims and believes the transcript should be filed. Judge Cooper, of course, is

free to ignore it but Petitioner and the D.C. Circuit would have the benefit of it on appeal.

***Second***, Judge Cooper has the inherent power to impose sanctions on Petitioner and or

undersigned counsel, including dismissal.

## Argument

### A.     The Standard of Review for Interlocutory Decisions Is "As Justice Requires."

Fed. R. Civ. P. 59(e) does not apply to a request for revision of an interlocutory decision.

*Williams v. Savage*, 569 F. Supp.2d 99 (D.D.C. 2008). The standard for interlocutory orders is

"as justice requires." Under this standard, the court has "a great deal of room for the court's

discretion and, accordingly, the 'as justice requires' standard amounts to determining 'whether

reconsideration is necessary under the relevant circumstances." *Id.* at 100.  Here, reconsideration

is respectfully requested because the proper application of controlling precedent should lead to a

conclusion that the transcript should be provided without restriction.  As discussed below, under

*In re Sealed Motion*, 490 F.2d 978 (D.C. Cir. 1989), the Government has the initial burden to put

forward a persuasive reason why the transcript should not be disclosed.  Neither the need for

secrecy, protection of pending cases related to the Mueller investigation, nor witness intimidation

are persuasive for reasons discussed herein.[2]  Granting Petitioner's Motion would avoid the

inherent unfairness of permitting the Government to defame Petitioner in releasing part of

Petitioner's testimony and then permitting the Government to defend against that claim in what

amounts to a secret trial, as Petitioner has repeatedly asserted.

    **B.**    **Under *In re Sealed Motion*, Where the Government Fails to Carry Its Initial Burden of Persuasion, the Witness Is Entitled to Their Transcript.**

        **1.**    **Absent a Persuasive Reason for Not Providing the Transcript, the Witness Has No Obligation to Give *Any* Reason for the Request.**

DOJ argues that Petitioner has failed to provide a sufficient reason why his

transcript should be released.  But, again, under *In re Sealed Motion*, it is DOJ's obligation to

come forward with some credible reason why secrecy is needed:

> Upon reviewing the decisional law concerning the proper standard to be applied
> to a witness's request for a transcript of his own grand jury testimony, we find
> that a grand jury *witness **has a general right to a transcript*** of such testimony
> absent the government demonstrating countervailing interests which outweigh the
> right to release of a transcript.  The Independent Counsel has made no such

---

[2] Even if Rule 59(e) applied, reconsideration is discretionary and appropriate to correct a legal error or prevent manifest injustice.  *Firestone v. Firestone*, 676 F.3d 1205 (D.C. Cir. 1996) (stating that a motion to alter or amend a judgment is discretionary and is appropriate to avoid clear error or to prevent manifest injustice).  *In re Sealed Motion* is controlling authority and the proper application of it would lead to an order requiring the Government to produce Petitioner's transcript and therefore avoid legal error and manifest injustice.  Production would level the playing field in the court of public opinion in this defamation case, thereby preventing the Government's goal of litigating this case in secret.

showing here and the record in this cause demonstrated that such grounds do not exist.

880 F.2d at 1373 (Emphasis added).  There, after the D.C. Circuit concluded that the Government had not put forth a persuasive reason for nondisclosure, the court did not then look to see whether the witness provided a persuasive reason.  Instead, once the court decided the Government's reason was unpersuasive that was the end of the matter, and the Government was ordered to produce the transcript without restriction on its use.[3]

The Government argues that the "particularized need" test and the test in *In re Sealed Motion* are similar.  That is true only in the sense both are balancing tests.  The material difference, however, is that the "particularized need" test puts the initial burden on the third-party requester while the test in *In re Sealed Motion* places the initial burden of persuasion on the Government.

The policy arguments put forward by the Government are the same ones rejected by the D.C. Circuit in *In re Grand Jury*, 490 F.3d 978, 988-89 (D.C. Cir. 2007).  Although the court of appeals stopped short of deciding that a grand jury witness is entitled to a copy of their transcript, this Court should take that next step under the circumstances of this case.  The parties ought to be put on the same footing in the court of public opinion, where the Government has failed to put forward a persuasive reason to the contrary.

---

[3] The Government also argues speciously that *In re Sealed Motion* did not address the distinction between gaining access and taking a copy of the transcript.  DOJ Resp. at 5.  But that argument is wrong based upon the language in the opinion.  The court concluded ordered that the Government "forthwith deliver the witness a copy of his testimony as a witness before the grand jury."  *Id.* at 1380.

5

2.      **The D.C. Circuit in *In Re Grand Jury* Did Not Weaken the Holding in *In re Sealed Motion*.**

The Government makes a strained argument that somehow the D.C. Circuit in *In re Grand Jury* lessoned the efficacy of *In re Sealed Motion*.  DOJ Resp. at 4 (arguing that the Court need not be faithful to *In re Sealed Motion* because the court of appeals subsequently in *In re Grand Jury* "considered and synthesized [its] wisdom …."). In Part III of the *In re Grand Jury* decision addressing the issue of whether grand jury witnesses are entitled to access their transcript, the D.C. Circuit cited twice to *In re Sealed Motion*. The first reference is in connection with its observations that at times a third-party seeks access to the transcript of a witness and at other times the witness seeks access to its own transcript. 490 F.3d at 986 ("On other occasions, as here, the witness may seek access to the transcripts of their own testimony. *See In re Sealed Motion* …."). The second reference is in connection with noting a split in the circuits between those that hold "the grand jury witnesses are entitled in certain circumstances to obtain a copy of their grand jury transcripts [citing *In re Sealed Motion*]" and those circuits that do not. *Id.* at 987. In citing the Ninth Circuit case as siding with the D.C. Circuit, the court did not make a distinction between cases involving the appointment of an Independent Counsel, which was the case in *In re Sealed Motion*, and other grand jury situations.

3.      **The Fact that *In re Sealed Motion* Involved the Government in Ethics Act is Immaterial to Its Holding.**

The Government also argues that because *In re Sealed Motion* involved the appointment of an Independent Counsel appointed under the Ethics in Government Act that somehow makes the opinions reasoning inapplicable here.  But there is nothing in the decision that makes that distinction.  What is more, in *In re Sealed Motion* the grand jury witness—unlike Petitioner here—was the target of the investigation, no indictment was returned, and the independent

6

counsel had filed his report and concluded the investigation. *Id.* at 1368.  Here, Petitioner was not a target of the Mueller investigation, the Mueller Report was submitted in 2019, and the Mueller investigation is complete.  If a target is entitled to a copy of his grand jury transcript in that circumstance, then surely Petitioner—a nontarget—is entitled to his transcript here.

### 4.    The Government—Not Petitioner—Is Seeking an "Automatic" Rule.

The Government criticizes Petitioner's request for a copy of his transcript because it argues it will lead to a rule of "automatic" disclosure of grand jury transcripts.  But it is the Government that apparently seeks an "automatic" rule of denying witnesses their "general right" to a copy of their transcript.  The Government argues that the transcript must be kept secret because it has a strong institutional interest in the secrecy of grand jury transcripts.  DOJ Resp. at 2.  But if that were the only consideration, a grand jury witness would never be entitled to a copy of their transcript.  The argument is circular: Government has a strong interest in the secrecy of grand jury transcripts and therefore that interest is a persuasive reason not to release them.  There is no support for this position either in *In re Sealed Motion* or in *In re Grand Jury*.

### C.    Where the Government Puts Otherwise Confidential Information into the Public Domain, It Is No Longer "Secret."

### 1.    The Senate Select Committee on Intelligence—Relying upon Mueller Evidence—Released All Material Facts into the Public Domain.

The secrecy argument is unpersuasive because fifteen months after the Mueller Report was released the Report of the Senate Select Committee on Intelligence on Russian interference in the 2016 election was made public.  The Senate Report relied heavily upon the evidence generated by the Mueller team, as reflected in the footnotes.  The Report made public all material facts contained in Petitioner's grand jury transcript and Footnote 112.  Information released into the public domain by the Government is not secret and Rule 6(e), therefore, does

not apply.  As the D.C. Circuit has observed:  **"**There must come a time, however, when information is sufficiently widely known that it has lost its character as Rule 6(e) material. The purpose in Rule 6(e) is to preserve secrecy.  ***Information widely known is not secret***."  *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994) (Emphasis added).  That is the situation here.

### 2.  A Comparison of the Senate Report and Petitioner's Declaration Confirms that the "Information Is Widely Known."

A comparison of the contents of Petitioner's Declaration describing what was asked and answered in his grand jury appearance reveals that all material facts in his transcript are already in the public domain.[4]  ***First,*** the Senate Report correctly identified Petitioner as a U.S. businessman: "Giorgi Rtskhiladze, a U.S. businessman originally from the country of Georgia is a former business partner and friend of Michael Cohen …."  *Id.* at 658; *compare* GR Dec. ¶¶ 5, 19 (filed in the related case in support of the Rule 60(b) motion).  ***Second,*** the Senate Report accurately stated "[t]hough Rtskhiladze, did not have personal insight into the matter, he assessed that if compromising material existed, Crocus Group would likely be responsible."  *Id.* at 660 n.4282; GR Dec. ¶¶ 10-15.  ***Third,*** the Senate Report accurately addressed the source of Petitioner's information about purportedly compromising tapes:

> [A] Moscow-based businessman, Sergey Khokhlov, who overheard two people in Moscow, in October 2015, discussing sensitive tapes of a Trump visit to Russia. He relayed what he heard to Giorgi Rtskhiladze, a friend and business associate of Michael Cohen.  In October 2016, Rtskhiladze informed Cohen of the alleged

---

[4] Consistent with Petitioner's right under *In re Grand Jury* to stand on the courthouse steps and tell the world what he was asked and what he answered before the grand jury, Petitioner addresses what happened in the grand jury room in his book *Kompromat: My Story from Trump to Mueller and USSR to USA* (Rare Bird Books 2020).  The book addresses his correction of lead prosecutor Jeannie Rhee as she attempted to characterize him as a "Russian businessman", instead of a Georgian-American businessman.  *Id.* at 129-131 (Ch. 8 "Back in the Grand Jury Room"); *compare* GR Dec. ¶¶ 5, 19.  The book also addresses Petitioner's telephone call from a friend telling him about overhearing a person dining at a nearby table bragging about having some compromising tapes of Donald Trump.  *Id.* at 209-216 (Ch. 13 "Final Rounds with Prosecutor Rhee"); *compare* GR Dec. ¶¶ 10-15.

tapes in Moscow, and Cohen informed Trump and several others.  Cohen has said that there was no action taken, and that he had been aware of other similar allegations that began shortly after Trump's travel to Moscow in 2013, none of which Cohen was able to corroborate.

*Id.* at 639; *compare* GR Dec. ¶¶ 10-15.

During an October 2015 phone call that Mr. Rtskhiladze had with his friend and former business associate, Gergei Khokhlov.  Mr. Khokhlov stated that while having dinner at a restaurant, Mr. Khokhlov overheard a stranger at a table next to him discuss tapes from Donald Trump's visit to Russia.  The overheard dinner conversation was not important to Mr. Rtskhiladze and Mr. Khokhlov so they did not discuss this matter again.  Mr. Khokhlov was aware that Mr. Rtskhiladze and hiss Georgian partners were in business with the Trump Organization.  Due to the news about the *Access Hollywood* tapes and its potential impact on Mr. Trump's reputation, Mr. Rtskhiladze sent a text message to Mr. Cohen to inform him that an individual was overheard discussing sensitive tapes of Mr. Trump's trip to Russia.

*Id.* at 659; *compare* GR Dec. ¶¶ 10-15.  **Fourth**, the Senate Report consistent with Petitioner's

testimony, unlike the defamatory Footnote 112, accurately quoted the text exchanges between

Petitioner and Michael Cohen on October 30, 2016:

*Giorgi Rtskhiladz (GR) to Michael Cohen (Cohen):*

Stopped flow of some tapes from Russia but not sure if there's anything else.  Just so u know…

*Cohen to GR:*

Tapes of what?

*GR to Cohen:*

Not sure of the content but person in Moscow was bragging had tapes from Russia trip.

*GR to Cohen*:

Will try to dial you tomorrow but wanted to be aware.

*GR to Cohen*:

I'm sure it's not a big deal but there are lots of stupid people.

>*Cohen to GR:*
>
>>You have no idea.
>
>*GR to Cohen*:
>
>>I do trust me.

*Id.* at 660.  In contrast, Footnote 112 deletes material parts of the exchange of texts that would have made plain that Petitioner had no personal knowledge about the purported tapes and took no steps to suppress anything.  Footnote 112 deletes the word "some" in the first exchange, (ii) omits "Not sure of the content but person in Moscow was bragging had tapes from Russia trip," and (iii) omits "I'm sure it's not a big deal but there are lots of stupid people."  GR Dec. ¶¶ 10-15.  ***Fifth***, with respect to Trump's visit to Moscow in 2013 for the Miss Universe Pageant, the Senate Reports states correctly that Petitioner "cautioned [Cohen] that he 'did not care for the Agalarovs [who owned the Crocus Group], thought they were gangsters and didn't do business with them.  *Id.* at 268; *compare* GR Dec. ¶¶ 8, 16, 25.  And when Petitioner heard that Trump was considering a real estate project with the Crocus Group, he "again warned Cohen that the Agalarovs … "really rough."  *Id.*

### D.   Simply Pointing to Cases Related to the Mueller Investigation Does Not Meet the Government's Burden of Persuasion.

The Government points to several cases as a reason to deny Petitioner's request.  None of these cases have anything remotely to do with Footnote 112 of the Mueller Report.[5]  Just

---

[5] *Sealed v. Sealed*, 21-gj-48, ECF No. 18 (Government's Resp. to Mot. to Unseal): *United States v. Internet Res. Agency, LLC* (18-CR-32 (D.D.C (Russian organization engaged in operations to interfere with elections and political processes); *United States v. Kilimnik*, No. 17-cr-201 (D.D.C.) (unregistered agent of a foreign government and political parties); *United States v.*

pointing to those cases without any explanation of the issues or how an order in this case

requiring production would lead to an "automatic" rule of disclosure cannot be sufficient to carry

the Government's initial burden of persuasion.  If it were, it would render the analysis in *In re*

*Sealed Motion* meaningless.

      **E.**    **None of the Policy Considerations Announced by the Supreme Court Are**
              **Applicable.**

      The Government's argument about the potential for witness intimidation as a reason to

deny this request is specious.  DOJ Resp. at 7.  In fact, none of the policy considerations

underlying grand jury secrecy applies.  The Supreme Court long ago set out five policy

considerations that underlie grand jury secrecy: prevention of escape, prevention of interference

with witnesses by targets, prevention of tampering with a witness who may later testify at trial,

encouraging free disclosure, and protecting a target who is exonerated:

> (1) To prevent the escape of those whose indictment may be contemplated; (2)
> to insure the utmost freedom to the grand jury in its deliberations, and to prevent
> persons subject to indictment or their friends from importuning the grand jurors;
> (3) to prevent subornation of perjury or tampering with the witnesses who may
> testify before [the] grand jury and later appear at the trial of those indicted by it;
> (4) to encourage free and untrammeled disclosure by persons who have
> information with respect to the commission of crimes; (5) to protect [the]
> innocent accused who is exonerated from disclosure of the fact that he has been
> under investigation, and from the expense of standing trial where there was no
> probability of guilt.

*United States v. Proctor & Gamble Co.,* 356 U.S. 677, 681 n.6 (1958).

      None of those policies support keeping Petitioner's grand jury testimony a secret.  There

is no chance of a target fleeing, there is no possibility of the Petitioner being pressured to change

his testimony at trial, there is no possibility of a chilling effect on testifying witnesses, and there

---

*Morenets*, No. 18-cr-263 (W.D. Pa.) (conspiracy to defraud the government); *EPIC v. DOJ*, No.
19-cv-810, ECF No. 54 (D.D.C.) (FOIA request for documents related to the Mueller
investigation).

is no need to protect a target who is not indicted.  The best DOJ can do is that it seeks to avoid a
rule of automatic disclosure of a witness's grand jury transcript.

> **F.   Even If a Persuasive Reason for Unrestricted Disclosure Were Required,
> Leveling the Playing Field in this Defamation Case Is that Reason.**

Petitioner has maintained from the inception that as a matter of fundamental fairness
there is a compelling reason why the transcript should be released.  The Government was not
required to release the Mueller Report.  In choosing to do so, the Attorney General expressly
acknowledged the damage the Report could do to nontargets of the investigation.  He announced
that DOJ would redact information that could harm the reputations of nontargets.  It did not do so
here.  Absent some persuasive reason (and DOJ has not provided one), the Government should
not be permitted to disclose to the public selectively edited and misleading information and when
sued for defamation refuse to disclose to the public the support for its publication.

Here, the vehicle for that defamation was testimony provided by a nontarget who fully
cooperated with DOJ.  DOJ continues to deride the merits of Petitioner's related case while at the
same time refusing to produce the transcript.  Releasing the transcript will level the playing field
in the court of public opinion.  Otherwise, the litigation of Petitioner's defamation claim will be
conducted in secret.  The inherent unfairness should be obvious.

> **G.   The Callow and Cavalier Attitude of the Government Is Revealed in its
> Tone-Deaf Comment that He Should Take Out an Ad in the *New York Times*.**

The immature and arrogant attitude of the Government is revealed in its tone-deaf
comment that all Petitioner needs to do is take out an ad in the *New York Times* announcing that
he is not a "Russian businessman."  DOJ Resp. at 7.  That is a chilling comment for several
reasons not least of which is that it demonstrates the lack of awareness of what happened here.
After the Steele Dossier became public there was intense worldwide media interest about what

the Mueller Report might reveal about purported compromising tapes.  The media devoured the defamation in Footnote 112 including its blatant mischaracterization of Petitioner as a "Russian businessman."[6]  But just as important, the statement demonstrates a failure to grasp the full breadth of the defamation.  Footnote 112 implies that Petitioner had personal knowledge about the existence of the purported tapes and took steps to suppress them—an implication wholly unsupported by his testimony.  As the Senate Report concluded, that implication was patently false based on the same evidence.

The Government should care greatly that an innocent citizen's reputation has been destroyed.  A comparison of Footnote 112, Petitioner's transcript, and the Senate Report raises an inference of intentional and or willful misconduct which should be explored, not swept under a rug of a non-existent need for secrecy.

> H.    **The Government Does Not Oppose the Alternative Request of Requiring It to File the Transcript under Seal in the Related Case But Seeks to Add Inappropriate Conditions.**

Although the Government does not oppose Petitioner's alternative request that the transcript be filed under seal in the related case, DOJ Resp. at 8, it argues that (i) it should be up to the judge in that case to make the decision that the transcript would be of assistance, and (ii) that Petitioner and his counsel would not be permitted to access the transcript.  Neither of these conditions are appropriate.  *First*, Petitioner as the plaintiff in the related case is responsible for prosecuting his claims and he did not need permission in the related case to file his Declaration summarizing his testimony based upon his review of the transcript.  In the same way, Petitioner

---

[6] Recent events in the Ukraine demonstrate the loaded nature of that phrase.  As Petitioner has alleged in the Amended Complaint, as a native of Georgia which was invaded by the Russian army in 2008, Petitioner has dedicated his professional career to fostering ties between the United States and Georgia.

is requesting that the Government be required to file Petitioner's transcript under seal whether the related court finds merit in its production or not.  The court is free to ignore it if it wishes but Petitioner would have the right to appeal to the D.C. Circuit if necessary.  ***Second***, in this circumstance, it would be inappropriate to penalize Petitioner by not permitting him access to his own transcript while the court and the Government have access.  And in the event that Petitioner or his counsel does "struggle" with compliance, Judge Cooper is empowered to impose sanctions upon Petitioner or his counsel should there be a breach of a seal order, including dismissal if warranted.  *Shepherd v. American Broadcasting Co*., 62 F.3d 1469, 1472 (D.C. Cir. 1995) (stating that "[a]s old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments").

## Conclusion

For the foregoing reasons, Petitioner respectfully requests that his Motion for Reconsideration be granted, and DOJ be directed to produce Petitioner's grand jury transcript without restriction.  Alternatively, Petitioner respectfully requests that DOJ be required to file the transcript under seal in the related case for the use of the court and counsel for the parties.

Respectfully submitted,

*Jerome A. Madden*
Jerome A. Madden
THE MADDEN LAW GROUP PLLC
1455 Pennsylvania Ave., NW, Suite 400
Washington, DC 20004
(202) 349-9836 (Office)
(703) 444-3567 (Direct)
JMadden@TheMaddenLawGroup.com
District of Columbia Bar No. 272260
*Counsel for Petitioner*

14

**<u>CERTIFICATE OF SERVICE</u>**

On February 28, 2022, I, Jerome A. Madden, using the CM ECF system provided a true

and accurate copy of this Motion upon counsel for the United States:

Rebecca M. Kopplin
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530

*Jerome A. Madden*
Jerome A. Madden

15