## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *IN RE* GRAND JURY PROCEEDINGS | Grand Jury Action No. 21-48 (BAH) <br> Chief Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

This is the fifth occasion—and hopefully the last—that petitioner Giorgi Rtskhiladze has called upon the Court to extend the ordinary parameters of how a grand jury transcript is to be handled to maintain the secrecy required under Federal Rule of Criminal Procedure 6(e). *See, e.g.*, *In re Grand Jury Procs.* ("Notetaking Order"), No. 21-gj-48 (BAH), 2021 WL 7908202 (D.D.C. Dec. 29, 2021); *In re Grand Jury Procs.* ("Denial Order"), No. 21-gj-48 (BAH), 2022 WL 474134 (D.D.C. Feb. 16, 2022). Now pending is his Motion for Reconsideration of the Order Denying Unrestricted Access to Petitioner's Grand Jury Transcript or, Alternatively, for an Order that the Departm[en]t of Justice Be Directed to File the Transcript Under Seal in the Related Case ("Pet'r's Mot. Recons."), ECF No. 21. For the reasons that follow, petitioner's motion, construed as a timely filed motion for reconsideration of a judgment under Federal Rule of Civil Procedure 59(e), is denied.

## I.    BACKGROUND

This matter began, on November 1, 2021, when petitioner filed an application with the undersigned, as Chief Judge of this Court, for "access to the transcript of his grand jury testimony" before the now-expired grand jury used in connection with the investigation led by Special Counsel Robert S. Mueller, III ("the Special Counsel"). Pet'r's Appl. at 1, ECF No. 2. Petitioner indicated that he had filed a civil action "asserting defamation and violation of the Privacy Act against Special Counsel Mueller and the Department of Justice," arising from

allegedly defamatory statements and implications about petitioner included in footnote 112 of

Volume II of the Report on the Investigation into Russian Interference in the 2016 Presidential

Election ("Mueller Report"). *Id.* at 1–2, 4. That civil action was dismissed by another Judge on

this Court, and petitioner filed an appeal to the D.C. Circuit. *Rtskhiladze v. Mueller*, No. 20-cv-

1591 (CRC), 2021 WL 3912157 (D.D.C. Sept. 1, 2021), *appeal filed*, No. 21-5243 (D.C. Cir.

docketed Oct. 29, 2021). Petitioner indicated to this Court that, after reviewing the transcript, he

"intend[ed] to submit an affidavit under seal in his district court suit." Pet'r's Appl. at 3.

Petitioner's request to review his grand jury transcript was granted, Min. Order (Dec. 9, 2021)

("Access Order"), but with express limitations on how petitioner could make further use of this

grand jury transcript. Specifically, the Court expressly noted: "to be clear, this Order does *not* by

itself authorize further disclosure (*e.g.*, for inclusion in filings to be made in the related civil

matter) of the contents of the transcripts." *Id.* (emphasis in original).

Petitioner returned next to seek permission to take notes during his in-person review of

the grand jury transcript, which permission the Department of Justice had withheld. Pet'r's Mot.

Permission Take Notes During Review Tr. Grand Jury Test. at 1, ECF No. 8. On December 29,

2021, over the government's opposition, the Court granted petitioner's second request, subject to

certain conditions that echoed petitioner's agreed-to terms, designed to maintain the secrecy of

information derived directly from and sourced directly to review of the grand jury transcript: (1)

"petitioner and his counsel shall refrain from disclosing such notes other than to counsel working

on the related civil matter," (2) "petitioner's counsel of record shall retain custody of any notes

taken pursuant to this Order, whether taken by counsel or by petitioner, at all times," and (3)

"petitioner and his counsel shall destroy, upon the completion and filing of the contemplated

affidavit or declaration . . . , all such notes and any copies or derivative works other than the completed filing."  Notetaking Order, 2021 WL 7908202, at *3.

On January 19, 2022, in the related civil case, petitioner publicly filed a motion for relief from the judgment of dismissal as to one count of his complaint, under Federal Rule of Civil Procedure 60(b).  Pl.'s Mot. Under R. 60(b)(2) & (6) Relief Final J. ("Rule 60 Motion"), *Rtskhiladze*, No. 20-cv-1591, ECF No. 37 (now sealed).  Attached was a declaration by petitioner including a recitation, "derived from notes taken by [himself] and [his] counsel during [the] review" of the transcript, *id.*, Att., Decl. Pl. Giorgi Rtskhiladze ("Rtskhiladze Decl.") ¶ 3, ECF No. 37-1 (now sealed), repeating various exchanges from his testimony with transcript citations.

The government promptly moved the next day in the civil matter to seal petitioner's Rule 60 Motion, including the Declaration, citing this Court's Access Order and Notetaking Order, arguing that this Court had not yet authorized public disclosure of any grand jury materials, and reiterating the government's understanding of petitioner's intent to make a sealed filing.  *See generally* Gov't's Mot. Seal Pl.'s Rule 60 Mot., *Rtskhiladze*, No. 20-cv-1591, ECF No. 38.  The government thus asked the presiding judge in that matter to "immediately seal Plaintiff's motion and its exhibits" pending direction from this Court as to whether public dissemination can be permitted.  *Id.* at 2–3.  The presiding judge sealed petitioner's Rule 60 Motion.  Min. Order (Jan. 20, 2022), *Rtskhiladze*, No. 20-cv-1591.

The next day, petitioner returned to this Court with a third request for "clarification" that the Rule 60 Motion need not be sealed.  *See generally* Pet'r's Mot. Clarification of Propriety of Sealing Pet'r's Decl. Related to His Grand Jury Test., ECF No. 13.  The government responded, arguing that the Access Order expressly disallowed redisclosure of materials from the transcript review, including in filings in *Rtskhiladze*, and that the Notetaking Order imposed further

restrictions on the handling of notes taken at the review.  Gov't's Resp. Pet'r's Mot. Clarification at 2–3, ECF No. 14.  The Court issued a minute order the same day "CLARIFYING that nothing in the Court's previous orders explicitly or implicitly granted permission to petitioner to disclose publicly material obtained from petitioner's review of his grand jury transcript."  Min. Order (Jan. 21, 2022).

The very next day, on January 22, 2022, petitioner made a fourth request of this Court. This time petitioner moved for a two-part order that, first, would unseal his Rule 60 Motion filed in another case before another Judge, and, second, would require the government to furnish petitioner with a copy of his grand jury transcript.  Pet'r's Mot. Unseal All Rule 60(b) Materials & Prod. His Grand Jury Tr., ECF No. 17.  Noting that a request for unsealing a docket item in a case is a separate question from whether petitioner may disclose grand jury materials and that the former question is properly directed to the presiding judge in that case, the Court denied the first part of the motion requesting unsealing of his Rule 60 Motion.  Min. Order (Jan. 26, 2022). Further, given the context, the Court construed the request for production of a copy of petitioner's grand jury transcript as "implicitly includ[ing] a request for authorization to disclose this transcript, in whole or in part, as an antecedent step for inclusion in a public Rule 60(b) filing in a civil case," and ordered the parties to complete briefing accordingly.  *Id.* (citation omitted).  On February 16, 2022, the Court denied the second part of petitioner's motion for a copy of his grand jury transcript.  Denial Order, 2022 WL 474134.

Petitioner has now returned with his fifth motion, seeking reconsideration of the Denial Order or, in the alternative, for an order directing the government to file a copy of the transcript under seal in the related civil matter, *see* Pet'r's Mot. Recons. at 1, which motion is now fully briefed and ripe for disposition.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) allows a litigant to file a "motion to alter or amend a judgment," within 28 days from entry of the judgment.  Altering or amending a judgment under Rule 59(e) "is an extraordinary remedy which should be used sparingly," *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015) (quoting 11 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2810.1 (3d ed. 2012)), as a "limited exception to the rule that judgments are to remain final," *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018).  "The Rule gives a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)).  The law is well-settled that reconsideration "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Pigford v. Perdue*, 950 F.3d 886, 891 (D.C. Cir. 2020) (quoting *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)); *see also Leidos*, 881 F.3d at 217 ("Under Rule 59(e), the court may grant a motion to amend or alter a judgment under three circumstances only: (1) if there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'" (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam))).

Consistent with Rule 59(e)'s corrective function, the only matters subject to reconsideration are those "properly encompassed in a decision on the merits," *Banister*, 140 S. Ct. at 1703 (quoting *White*, 455 U.S. at 451), such that "courts will not address new arguments or evidence that the moving party could have raised before the decision issued," *id.*  Accordingly, a

motion to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)).  Whether to grant a motion for reconsideration is within the district court's discretion.  *See Leidos*, 881 F.3d at 216–17.

## III.   DISCUSSION

With respect to the pending request to reconsider the denial of a copy of his grand jury transcript, petitioner has not only failed to meet the Rule 59(e) standard but also would not have prevailed if the current record had been before the Court at the time of the Denial Order. Petitioner's alternative request that the government file the grand jury transcript under seal in the related civil case in a manner allowing petitioner's access, is likewise denied.

### A.   Grand Jury Transcript Copy

Petitioner has not provided adequate reason to reverse the Court's previous determination that he shall not be provided with a copy of his grand jury transcript.  First, petitioner's reliance on *In re Sealed Motion*, 880 F.2d 1367 (D.C. Cir. 1989) (per curiam), to show error in the Denial Order, is misplaced.  Second, petitioner's argument that relevant grand jury material has already been publicly disclosed both fails to exempt the transcript from Rule 6(e) and undermines any need-based argument for providing petitioner with a copy.  Third, media coverage of what should have been a sealed filing—and concern about petitioner's possible role in facilitating such coverage—further militates against providing a copy of the transcript.  In sum, petitioner fails to meet any test for disclosure given that the Court has already declined to create a rule of automatic entitlement to a witness's own grand jury transcript.

1.      *In re Sealed Motion*

In the Denial Order, the Court observed that "because petitioner has presented no clear

argument . . . as to *why* he should receive an unrestricted copy of the grand jury transcript,

granting his request would in essence recognize an automatic entitlement to a transcript copy,

and permission to redisclose the same, for any grand jury witness."  Denial Order, 2022 WL

474134, at *3 (emphasis in original).  In essence, the Denial Order, without deciding precisely

what degree of showing petitioner needed to make to prevail, placed some persuasive burden on

petitioner to support his request for a copy of the transcript of his grand jury testimony.

Petitioner protests that "under binding 1989 D.C. Circuit precedent, that conclusion is err [sic]."

Pet'r's Mot. Recons. at 1.

Petitioner, invoking *In re Sealed Motion*, 880 F.2d 1367 (D.C. Cir. 1989) (per curiam),

asserts a different rule: "a grand jury witness has a general right to a transcript" of his own grand

jury testimony "absent the government demonstrating countervailing interests which outweigh

the right to release of a transcript."  Pet'r's Mot. Recons. at 2 (quoting *In re Sealed Motion*, 880

F.2d at 1373).[1]  On superficial reading, that rule predicated on a statement made in *In Re Sealed

Motion* is difficult to reconcile with the later statement in *In re Grand Jury*, 490 F.3d 978, 990

(D.C. Cir. 2007) (per curiam), that grand jury witnesses are entitled "to review transcripts of

their own grand jury testimony in private," since policy considerations underlying grand jury

secrecy present no "good reason," *id.*, to prevent such review.  Notably, too, *In re Grand Jury*

---

[1]      Despite the purportedly dispositive significance of *In re Sealed Motion*, petitioner first cited the case only in reply in support of his denied motion for production of a transcript copy, *see* Pet'r's Reply Gov't's Opp'n Mot. Unseal & Unrestricted Prod. of His Grand Jury Tr. at 2, ECF No. 19, and included an excerpt clearly reflecting the D.C. Circuit's caveat that its holding applied to "grand jury witness[es] named in an independent counsel's report," *id.* (quoting *In re Sealed Motion*, 880 F.2d at 1370–71).  Petitioner presented no argument then for why the *In re Sealed Motion* rule should be extended beyond its express boundaries and the Denial Order did not address, as petitioner notes, *see* Pet'r's Mot. Recons. at 2 n.3, this plainly inapposite case.

7

expressly declined to reach "the issue of whether witnesses also have a right to obtain a copy of the transcripts of their prior testimony," *id.*, an issue petitioner suggests has been long settled by *In re Sealed Motion*.  For obvious reasons, a grand jury witness who is furnished a copy of his own grand jury transcript already has everything necessary to perform a private, in-person review of such transcript.  If a witness has been presumptively entitled to a copy of his grand jury transcript since at least 1989, as petitioner insists, a D.C. Circuit panel in 2007 would have had little need to craft a narrower rule, supported by substantial analysis, about private review of a witness's own grand jury transcript.

This apparent disconnect arises because *In re Sealed Motion* does not provide the broad rule petitioner claims.[2]  Rather, that opinion was narrowly tailored to the context of a witness before a grand jury convened pursuant to the Independent Counsel Act ("ICA"), 28 U.S.C. § 591 *et seq.*, the statutory authority underlying Independent Counsel investigations.  *In re Sealed Motion*, 880 F.2d at 1368.[3]  That specific statutory context gave rise to special considerations placing a mighty thumb on the scale in favor of providing a grand jury witness with a transcript copy.  The text of *In re Sealed Motion* makes plain that its holding is so cabined, and an examination of the opinion's underlying reasoning illuminates why.

---

[2]     Petitioner implicitly acknowledges the limits of *In re Sealed Motion* and *In re Grand Jury* in passing, by arguing that this Court should "take that *next step* under these unique circumstances" of "deciding that a grand jury witness is entitled to a copy of their transcript."  Pet'r's Recons. Reply at 2 (emphasis added).  If D.C. Circuit precedent already provides such an entitlement, as petitioner elsewhere argues strenuously, the urged "next step" would be unnecessary here.

[3]     Petitioner notes that "the D.C. Circuit in *In re Grand Jury* did not weaken the holding in *In re Sealed Motion*," Pet'r's Recons. Reply at 6 (capitalization altered), despite a "strained argument" by the government that "*In re Grand Jury* lessoned [sic] the efficacy of *In re Sealed Motion*," *id.* (citing Gov't's Resp. Pet'r's Mot. Recons. ("Gov't's Recons. Opp'n") at 4, ECF No. 23).  This is a straw man as the government makes no such claim.  The government merely observes, correctly, that *In re Grand Jury* borrowed some of the reasoning from *In re Sealed Motion* and applied it to conclude that the petitioning grand jury witnesses had a right to *access* a transcript even outside of the special ICA context to which the earlier case was cabined.  *See* Gov't's Recons. Opp'n at 4–6.  An entirely separate development, however, did indeed "lessen the efficacy" of *In re Sealed Motion*, namely: the sunsetting of the ICA in 1999.

The ICA, devised in the aftermath of Watergate, provided for the appointment of "independent counsels who have considerable independence from the Executive in pursuing an investigation and possible prosecution of a subject," limited to the investigation of high government officials, and culminating in the filing of a public report even if no indictment issues. *In re Sealed Motion*, 880 F.2d at 1369. Such a report "is a complete departure from" the practice "following the return of a no bill by a grand jury." *Id.* at 1370. As a safeguard, the ICA provides a process by which persons named in a report may review relevant portions and submit, in advance, "comments" to be included in the final version of the report released to the public. *Id.* This statutorily mandated process is essential to the reasoning underlying the *In re Sealed Motion* rule, and provides the reason that a grand jury witness would require his grand jury testimony so as to be able to offer accurate and complete "comments." *See id.* at 1373. That rationale further helps such a witness establish a "particularized need" for a transcript copy, if that is the standard a witness is required to meet. *See id.* at 1377–79.[4]

The ICA is inapplicable in petitioner's case, as is the *In re Sealed Motion* rule. Petitioner testified before a grand jury convened in support of the investigative efforts of the Special Counsel into Russian interference in the 2016 presidential election—an undertaking *not* governed by the ICA, which expired in 1999 and was thereafter "replace[d]" by Department of Justice regulations, Office of Special Counsel, 64 Fed. Reg. 37,038, 37,038 (July 9, 1999) (codified at 28 C.F.R. §§ 600.1 *et seq.*). These regulations contain no "comment" procedure of the kind provided by the ICA. Rather, "[a]t the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report explaining the prosecution or

---

[4]    Petitioner asserts that "there is nothing in the [*In re Sealed Motion*] decision that makes that distinction" between ICA investigations and more conventional grand jury activities, Pet'r's Recons. Reply at 6, but this assertion is without foundation as the analysis in *In re Sealed Motion* summarized here does exactly that.

declination decisions reached by the Special Counsel." 28 C.F.R. § 600.8(c). Public release of reports issued by the Attorney General to the Congress relating to a Special Counsel is possible if the Attorney General deems such release "in the public interest." *Id.* § 600.9(c). No part of this process permits the target of a Special Counsel investigation, nor any witness who testified before a grand jury as part of a Special Counsel investigation, to perform any advance review of the Special Counsel's confidential report (which may or may not ultimately become public, at the discretion of the Attorney General), nor to provide "comments" to be included in an appendix. Simply put, for better or worse, the specific feature of the ICA that supported the conclusion in *In re Sealed Motion*—by supplying a tangible reason a grand jury witness may need a copy of his own transcript—has no analogue in the current Special Counsel regulations.

The Mueller Report became largely public by operation of the Special Counsel regulations. Mr. Mueller submitted his confidential report to then-Attorney General William P. Barr on March 22, 2019, at which time Attorney General Barr notified Congress of the same and concurrently "'determine[d] that public release of' this notification 'would be in the public interest.'" Letter from William P. Barr, Att'y Gen., to Lindsey Graham, Chairman, Senate Comm. on the Judiciary et al. (Mar. 22, 2019) (quoting 28 C.F.R. § 600.9(c)). On April 18, 2019, under this same authority, the Attorney General transmitted to Congressional leaders, and released to the public, a redacted version of the Mueller Report. Letter from William P. Barr, Att'y Gen., to Lindsey Graham, Chairman, Senate Comm. on the Judiciary et al. (Apr. 18, 2019). Despite being mentioned in the report, at no point was petitioner afforded the opportunity to review and "comment" on portions of the report where he was mentioned, including in Footnote 112, which is the gravamen of the complaint in petitioner's related civil suit. No such process is provided or contemplated under the Special Counsel regulations, however. Consequently, the

reasoning to provide grand jury transcript access set out *In re Sealed Motion* due to the old ICA procedures is simply inapposite here.

### 2.    Required Showings

Lurking behind the parties' briefing in this case has been the unsettled question of what showing, if any, is required for a grand jury witness to compel production of a copy of the transcript of his testimony.  Two D.C. Circuit opinions have not needed to reach that question but nonetheless, through their reasoning, have provided guidance as to the appropriate parameters for evaluating a first-party transcript production request.  Some synthesis is in order, from which a simple summary emerges.  In this Circuit, so long as the request is "preliminarily to or in connection with a judicial proceeding," a grand jury witness is entitled to *access* to a transcript of his own testimony.  He is not, however, entitled to a *copy* of that transcript unless he shows an articulable interest, also "preliminarily to or in connection with a judicial proceeding," not satisfied by transcript access.

#### a)    *Transcript Access: Generally Available*

*In re Grand Jury* announced a seemingly blanket rule that "grand jury witnesses are entitled to review the transcripts of their own testimony in private," 490 F.3d at 980, observing that "the Supreme Court's 'particularized need' standard, which the Court crafted to deal with *third-party* requests for secret transcripts of other witnesses' testimony, does not apply in [a] *first-party* context," *id.* at 989 (emphasis in original).  The underlying logic of *In re Grand Jury*, however, suggests that the blanket entitlement of grand jury witnesses to access transcripts of their own testimony set out in that key sentence may not be quite as absolute as it suggests.

First, as the Circuit notes, "[f]or authorized disclosure of grand jury materials under Rule 6(e)(3)(E)(i), a threshold requirement is that the disclosure be 'preliminar[y] to or in connection

with a judicial proceeding.'"  *Id.* at 986 (second alteration in original).  That "threshold" was met

in that case because the "judicial proceeding[s]" at issue were either grand jury hearings at which

previous witnesses—the transcript requestors—were subpoenaed to testify again, or perhaps

possible subsequent criminal trials.  *See id.* at 980, 986.[5]  To be sure, a literal reading of the key

sentence repeated above from *In re Grand Jury* supports an interpretation that a grand jury

witness need not satisfy the "preliminarily to or in connection with" threshold such that mere

curiosity by a witness about his own past (perhaps long-past) grand jury testimony would suffice

to permit access to the transcript.  The Circuit surely did not intend to waive what it described as

a "threshold requirement," however, particularly given its emphatically strict construction of

Rule 6(e) and the "exclusive" nature of the Rule's exceptions.  *See McKeever v. Barr*, 920 F.3d

842, 844–46, 850 (D.C. Cir. 2019) (holding that district court has no "inherent authority to

disclose . . . historically significant grand jury matters" and that "'without an unambiguous

statement to the contrary from Congress, we cannot, and must not, breach grand jury secrecy for

any purpose other than those embodied by [Rule 6(e)]'" (quoting *In re Grand Jury 89-4-72*, 932

F.2d 481, 488 (6th Cir. 1991))).

Second, the key sentence of *In re Grand Jury* that seemingly authorizes automatic

transcript access emanated from an opinion where the Circuit "weigh[ed] the competing interests

of the Government and grand jury witnesses," 490 F.3d at 987, and in so doing identified

specific witness interests that naturally expire over time.  Specifically, the Court observed that it

is "not uncommon for a witness to testify honestly but inaccurately on certain points," leading to

---

[5]      In *In re Grand Jury*, "the Government d[id] not dispute that the grand jury investigation is a 'judicial
proceeding' for these purposes."  490 F.3d at 986.  The Circuit's opinion did not expressly specify that the relevant
"judicial proceeding" was the subpoenaed *subsequent* testimony of the witnesses at issue, as opposed to the *original*
testimony for which the transcripts were sought.  The latter construction, however, cannot possibly be the intended
reading, as it would necessarily render *any* disclosure of a grand-jury matter as "in connection with a judicial
proceeding"—namely, the proceedings of the grand jury at issue—and cause all five possible disclosure predicates
in Rule 6(e)(3)(E)(i)–(v) to be pure surplusage.

a witness's "great interest in ensuring that their recollections are accurately reflected in the transcript[]," lest they otherwise later be vulnerable to the government using those inconsistencies against them. *Id.* at 988. Further, federal law "expressly allows witnesses to timely recant prior grand jury testimony without legal penalty." *Id.* (citing 18 U.S.C. § 1623(d)). Finally, if "a witness may testify again in the same investigation," as was the case in *In re Grand Jury*, "the witness has an additional reason to review the transcript of the prior testimony: to help prepare for the upcoming testimony." *Id.* Notably, *all* of these interests expire over time, whether due to the closure of the recantation window, the running of the statute of limitations on false statements liability, or the exhaustion of reasons a witness might be called to testify again.[6] The access decision thus emerged from a "weighing" of identified ripe interests, so it stands to reason that under some circumstances a witness may no longer have any interests causing the scale to tip in their favor.

All told, while *In re Grand Jury* rejected the "particularized need" analysis for reviewing a first-party transcript access request, the Circuit granted the witnesses access to their grand jury transcripts based on observations indicating they *did* have a need of some kind to access the transcript. Nevertheless, to read this decision as suggesting a blanket entitlement by witnesses to their grand jury transcripts, in circumstances where a witness has not identified a need for transcript access by tethering the request to a "judicial proceeding" for which the review is germane, is simply an over-reading. *See, e.g.*, *In re Grand Jury*, 566 F.3d 12, 17–18 (1st Cir.

---

[6]   The recantation safe harbor is only available "in the same continuous court or grand jury proceeding in which a declaration is made." 18 U.S.C. § 1623(d). Separately, the general five-year statute of limitations for federal non-capital offenses, 18 U.S.C. § 3282(a), applies to false statements before a grand jury, 18 U.S.C. § 1623.

2009) (endorsing the reasoning of *In re Grand Jury* (D.C. Cir.) but declining to adopt its "holding" of blanket entitlement to access).[7]

> b)   *Transcript Copy: A Higher Bar*

Even if *In re Grand Jury* were read as providing an unqualified right of *access* to a witness's own grand jury testimony, authority including *In re Grand Jury* itself provides support for maintaining a higher standard when evaluating requests for a *copy* of such transcript. *See In re Grand Jury*, 490 F.3d at 989–90 (D.C. Cir.) ("Regardless of whether the possibility of witness intimidation would justify denying copies of transcripts, an issue we need not decide, the Government's witness intimidation argument lacks force with respect to a witness's merely *reviewing* the transcript in private . . . ." (emphasis in original)); *In re Grand Jury*, 566 F.3d at 18 (1st Cir.) (imposing "a less demanding requirement of particularized need" on requests for transcript access as opposed to "'a strong showing of particularized need' in order to obtain a copy" (quoting *In re Special Procs.*, 373 F.3d 37, 47 (1st Cir. 2004))). Indeed, the Federal Rules of Criminal Procedure themselves, by expressly affording criminal defendants the right to obtain a copy of "the defendant's recorded testimony before a grand jury relating to the charged offense," FED. R. CRIM. P. 16(a)(1)(B)(iii), hint at the absence of a similar blanket entitlement to transcript copies for a non-defendant witness.

Petitioner argues that the result of declining to furnish him a transcript copy is a *de facto* "'automatic' rule of denying witnesses their 'general right' to a copy of their transcript," Pet'r's Reply Gov't's Opp'n Mot. Recons. ("Pet'r's Recons. Reply") at 7, ECF No. 24, but this argument suffers several flaws. First, the "general right" to which petitioner refers does not exist

---

[7]     In petitioner's case, his request for access to his grand jury transcript was undeniably germane to a "judicial proceeding"—the related civil case and associated pending appeal—and he articulated a need for access to the transcript so as to be able to prepare an accurate declaration for filing in that case recounting aspects of his testimony.

outside of the ICA context in which *In re Sealed Motion* sat, as discussed in Part III.A.1, *supra*. *See also United States v. John Doe, Inc. I*, 481 U.S. 102, 125–26 (1987) (Brennan, J., dissenting) (citing "the well settled rule that a witness is not entitled to a copy of his grand jury testimony on demand, even though he obviously was present in the grand jury room during the receipt of evidence, *since* a *rule of automatic access would expose grand jury witnesses to potential intimidation* by making it possible for those with power over the witness to monitor his or her testimony" (emphasis added) (quotation marks and citation omitted)); *United States v. Clavey*, 565 F.2d 111, 114 (7th Cir. 1977) ("The policy reasons justifying strict preservation of the secrecy of ongoing grand jury proceedings are compelling and should not be lightly discounted simply because a witness asserts an unverified need for a transcript of his prior testimony."), *aff'd by an equally divided court*, 578 F.2d 1219 (7th Cir. 1978) (en banc).[8]  Further, no automatic rule of denial is created here by requiring demonstrably good reason that transcript access is insufficient before furnishing a grand jury transcript copy to the testifying witness. Notably, petitioner has cited no decision suggesting that, as a general matter, the ability to access and review a transcript is insufficient to accomplish whatever purposes might be served by receiving a copy instead.[9]

---

[8]    Petitioner acknowledges that the government "seeks to avoid a rule of automatic disclosure of a witness's grand jury transcript," Pet'r's Recons. Reply at 12, but suggests that *his* case deserves an exception since "none of the policy considerations underlying grand jury secrecy applies," *id.* at 11, noting that here "[t]here is no chance of a target fleeing, there is no possibility of the Petitioner being pressured to change his testimony at trial, there is no possibility of a chilling effect on testifying witnesses, and there is no need to protect a target who is not indicted," *id.* at 11–12.  Even if that were all true here—a question which need not be decided here and on which the record in this docket is insufficient to enable fulsome analysis—a rule of automatic disclosure remains ill advised.  Consequently, absent good reasons for disclosure, no disclosure is granted.  As discussed in more detail in Parts III.A.3–.4, *infra*, petitioner has failed to make any such showing here.

[9]    This Court acknowledges that, on occasion, courts have endorsed the right of a witness to receive a transcript copy, without explicitly articulating why any need could not have been equally satisfied by providing only access, perhaps with permission to take notes, along the lines received by petitioner.  *See, e.g., In re Sealed Motion*, 880 F.2d at 1373 ("[T]he witness here has a particular need for his grand jury testimony since he may comment on statements in the Report of the Independent Counsel."); *Bursey v. United States*, 466 F.2d 1059, 1080 (9th Cir. 1972) ("[C]oncepts of fundamental fairness inherent in due process require that a grand jury witness be given some protection from these risks [of lost recollection of prior testimony] before he is compelled to answer repetitious

Finally, the opportunity for a grand jury witness to make the showing needed to be provided a transcript copy is not merely theoretical, as that standard *has* been met before. Indeed, as a practical matter, special circumstances may cause a witness's articulated needs to be unsatisfied by review of their transcript at a government location.  For example, in another matter also involving the testimony of a grand jury witness in connection with the Special Counsel's investigation, this Court credited a detained petitioner's stated need for a copy of his grand jury transcript, as opposed to mere access by him or his counsel at a government office, to aid in preparing his defense in a serious criminal matter that included charges purportedly relying on information derived from his grand jury testimony provided pursuant to a grant of immunity. *See In re Grand Jury Investigation*, No. 18-gj-8 (BAH), 2019 WL 13160140, at *8–9 (D.D.C. Oct. 30, 2019).  There, the imposing length—around 900 pages—of the transcript, the need for "thorough review" by a detained defendant under the circumstances implicating nuanced arguments about immunity from serious criminal liability, and the "concrete" nature of the petitioner's stated need all militated in favor of providing a copy of the grand jury transcript.  *Id.* Furthermore, the government's general concern about witness intimidation was greatly attenuated because, *inter alia*, "[t]he petitioner [was] currently incarcerated at a federal detention center in another district," and as such "the potential risk of the petitioner being subject to third-party intimidation appears negligible."  *Id.* at *7.  The opinion made clear that allowing the petitioner there to receive a transcript copy implied nothing about later requests by others: "Granting the petitioner access to a copy of his grand jury testimony transcript does not mean similar access will, would, should or must be granted to any and all petitioning grand-jury witnesses in the future.  Each such witness would face a fact-specific balancing inquiry, and

---

questions. . . . Upon motion of a grand jury witness, the court may order the attorney representing the grand jury to permit the witness to inspect, copy, or photograph the witness' recorded testimony before the grand jury.").

rarely will similar circumstances arise where the witness is, as the petitioner in this case, incarcerated awaiting trial based on evidence that may have been collected in connection with immunized testimony provided before a grand jury." *Id.* at *8.

From these observations emerges the general contours of a rule governing requests by grand jury witnesses for copies of transcripts of their own testimony. While *In re Grand Jury* ostensibly rejected the use of a "particularized need" standard in the context of first-party requests to *review* transcripts, 490 F.3d at 989, it did not clearly do the same for first-party requests for *copies* of transcripts. Accordingly, to receive a copy of his grand jury transcript a petitioner must, as a threshold matter, articulate some identifiable interest, "preliminarily to or in connection with a judicial proceeding," that is unmet by in-person review. Mere curiosity or a desire to publicize the contents of the transcript does not suffice. Such a showing, though, does not end the inquiry: "the competing interests of the Government and grand jury witnesses" must still be weighed. *Id.* at 987. That balancing test, however, simply cannot end in disclosure absent a petitioner's articulation of an interest requiring a copy as opposed to mere access. In this case, such an articulation is altogether absent.

### 3.    The Double-Edged Sword of Prior Disclosure

In an attempt to explain why he is entitled to a copy of his transcript, petitioner argues *both* that a copy of the transcript (with no disclosure restrictions) is necessary for him to "level the playing field" in vindicating his claims against the government, *and* that the transcript has ceased to be secret because all of the "material facts" therein are "widely known." Petitioner cannot have it both ways.

In his reply in support of the instant motion, petitioner for the first time argues that his grand jury transcript is no longer "secret" because "all material facts in his transcript are already

in the public domain," Pet'r's Recons. Reply at 8, citing to the Report of the Senate Select

Committee on Intelligence on Russian Interference in the 2016 Election ("Senate Report"), *id.* at

7–10.[10]  As support, petitioner argues that the D.C. Circuit has held that at some point

"information is sufficiently widely known that it has lost its character as Rule 6(e) material."  *Id.*

at 8 (quoting *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994) (per curiam)).  True, but in the

same paragraph the Circuit "recognize[d] the general rule that 'Rule 6(e) does not create a type of

secrecy which is waived once public disclosure occurs,'" *In re North*, 16 F.3d at 1245 (quoting

*Barry v. United States*, 740 F. Supp. 888, 891 (D.D.C. 1990)), and therefore the Circuit expressly

declined "to formulate a rule that once a leak of Rule 6(e) material has occurred, government

attorneys are free to ignore the pre-existing bond of secrecy," *id*.

The *In re North* dichotomy suggests some daylight between mere "public disclosure"

(which necessarily places information in the "public domain") and information becoming

"widely known," with the former potentially preserving Rule 6(e) secrecy and the latter

potentially extinguishing it.  Assuming, without deciding, that the comparison petitioner provides

between his Declaration and the Senate Report suffices to show that the material facts in the

Declaration are in the "public domain," that comparison does not establish that such facts are

"widely known," nor is the Court equipped with an adequate factual basis to so find.

Furthermore, even if the enumerated facts from petitioner's *Declaration* are "widely

known," that does not show that "all material facts in his *transcript*," Pet'r's Recons. Reply at 8

(emphasis added), are as well.  Petitioner does not aver that his Declaration is a recounting of the

---

[10]      Petitioner also states that his book, GIORGI RTSKHILADZE, KOMPROMAT: MY STORY FROM TRUMP TO
MUELLER AND USSR TO USA (2020), "addresses what happened in the grand jury room," listing a handful of facts
therein that generally align with disclosures made in the Senate Report.  Pet'r's Recons. Reply at 8 n.4.

*entirety* of his grand jury testimony, nor even of everything "material" therein.[11]  If anything, petitioner's own argument urging release of the transcript to "level the playing field in the court of public opinion," *id.* at 12, cuts the other way.  The argument that the "playing field in the court of public opinion" is not "level," to the extent seriously asserted, strongly suggests that "material facts" are present in the transcript but not already "widely known."

Meanwhile, although the Senate Report does not undermine grand jury secrecy to such a degree that the transcript of petitioner's testimony is now fair game for unfettered public disclosure, it *does* significantly undermine the already threadbare rationale petitioner offers for why he needs such a transcript to be able to prosecute effectively his related civil matter, particularly given that he has already received access to the transcript on terms largely proposed by him and filed a declaration based on his and his counsel's notes from such access.  In particular, petitioner shows how the Senate Report provides—with legislative imprimatur—the essential facts relevant to his two central grievances about Footnote 112: (1) "its blatant mischaracterization of Petitioner as a 'Russian businessman,'" and (2) petitioner's testimony as to whether he "had personal knowledge about the existence of the purported [compromising] tapes [of Mr. Trump] and took steps to suppress them."  Pet'r's Recons. Reply at 13 (describing the alleged defamation); *id.* at 8–10 (citations to Senate Report addressing both issues).

---

[11]     The transcript page numbers cited in the Declaration suggest that while petitioner's recitation of facts from the transcript is extensive, it may not be exhaustive.  For example, while the Declaration cites material from transcript pages from 6 through 50, some multi-page gaps are present, and the record is silent as to whether the transcript continued past page 50.  *See* Rtskhiladze Decl. ¶¶ 4–27.  Additionally, the Declaration frequently describes statements to which petitioner testified without identifying the question asked.  *See id.* ¶¶ 5–6, 9–10, 13–14, 17–18.  Finally, petitioner's analysis mapping the Senate Report to paragraphs of his Declaration does not cover various portions of the 27-paragraph Declaration, and nothing about the omitted paragraphs suggests they are less than "material."  *Compare* Pet'r's Recons. Reply at 8–10, *with* Rtskhiladze Decl. ¶¶ 6–7, 9, 17–18, 20–24, 26–27 (paragraphs of Declaration not discussed in reply's description of Senate Report).  All told, the Senate Report appears to disclose only a subset of "material facts" included in the Declaration, which in turn contains only a subset of the content of the entire grand jury transcript.

Notwithstanding whether the Senate Report in fact contained "all material facts" from the grand jury transcript writ large, *see* note 11, *supra*, petitioner has left no doubt that *he sees it that way*—a view that presumably incorporates his perspective on which facts are "material" to his civil case.  *See* Pet'r's Recons. Reply at 7.[12]  On top of that, petitioner has provided his Declaration enumerating the relevant questions and answers, with page number citations, from the grand jury transcript.  Given this ample base of evidence petitioner offers as to the prior disclosure of *relevant* aspects of his transcript, the record is bare as to what "interests" of petitioner remain unsatisfied that can only be addressed by furnishing an unrestricted copy of the *entire* transcript.[13]

### 4.    *Daily Mail* Article

As noted in the Denial Order, the government has rightly highlighted "that petitioner 'and his counsel have already struggled to comply with this Court's restrictions on the use of grand jury material.'"  Denial Order, 2022 WL 474134, at *4 (quoting Gov't's Resp. Pet'r's Mot. Unseal & Prod. at 7, ECF No. 18).  Since then, events have proven that petitioner's failure to adhere to those restrictions was not a harmless ministerial slip-up but rather has had real-world effects, further militating against granting petitioner unrestricted use of a copy of his grand jury transcript.

---

[12]    Petitioner's characterization of the Senate Report also gravely undermines his lofty accusation that he has been forced "to challenge the [government's] conduct in a secret trial" where the government "litigate[s] its wrongdoing in private, something anathema to judicial transparency."  Pet'r's Recons. Reply at 2–3.  This claim is irreconcilable with the premise that the relevant facts are already public.

[13]    A brief reflection on the nature of the restrictions on petitioner's filings and disclosures may be useful.  Taken together, the Access Order and the Notetaking Order restrict only petitioner's disclosure of materials obtained or derived from the in-person review of his grand jury transcript.  To the extent that portions of the Rule 60 Motion fall outside such restriction, those portions need not be sealed on account of *this* Court's orders and Rule 6(e).  Additionally, to the extent that petitioner has shown that certain facts that he testified about before the grand jury have already become public on account of the Senate Report, it also follows that petitioner's public disclosure of the fact of that grand jury testimony is permissible, since it can reasonably be said that the in-person review of the grand jury transcript was not necessary for petitioner to obtain that information.  As a result, disclosure may be permissible of portions of the Declaration, and this Court's orders do not preclude the parties in the related civil case from agreeing on redacted versions of the Rule 60 Motion to be disclosed publicly and unsealed through an order by the presiding judge in that case—a process not requiring further intervention by the undersigned.

On February 19, 2022, counsel for petitioner notified the Court that "on February 18, 2022, an article appeared in the Daily Mail (UK) that referred to" the Rule 60 motion and accompanying Declaration.  Notice of Article in Daily Mail (UK) ("Art. Notice") at 1, ECF No. 22 (citing Geoff Earle, *EXCLUSIVE: Georgian-American Businessman Makes His Own Hillary 'Spy' Charge and Accuses Former Clinton Lawyer Jeannie Rhee of 'Infiltrating' Mueller Team and Skewing His Responses in Golden Showers Interrogation* ("Article"), DAILY MAIL (Feb. 18, 2022), https://bit.ly/3iPmCSK).  Counsel reported that "[a]ccording to the article, the reporter obtained a copy of the Rule 60(b) materials during the eighteen-hour period between the time the Motion was filed and the time it was sealed."  *Id.*; *accord* Article ("DailyMail.com was able to review a memorandum and a declaration Rtskhiladze filed with the court during a window before it was placed under seal.").[14]  Counsel's prompt notification of and acceptance of responsibility for this incident is appreciated, and counsel's representation that "[c]ounsel was not involved in the initiation or preparation of this article," Art. Notice at 1, is accepted at face value.  It is questionable at best, however, whether *petitioner* was similarly circumspect.

Several indicia suggest petitioner was not an entirely passive subject of the *Daily Mail* article.  First, the article includes at least one quote that petitioner purportedly "told DailyMail.com in an interview."  Article.  Second, petitioner promoted the *Daily Mail* article in at least *five* still-visible social media postings soon after its publication, at one point describing it as "important for every US citizen" and "about Justice for all of us."  Giorgi Rtskhiladze

---

[14]   According to the Court's docketing information, the Rule 60 Motion actually was publicly available for about 26 hours, somewhat longer than petitioner's 18-hour estimate.  Counsel for petitioner filed the Rule 60 Motion, with attached Declaration, at 3:30 PM on January 19, 2022.  The government filed its motion to seal the document the next day at 4:33 PM.  Petitioner responded with an opposition at 5:24 PM on January 20, 2022, and the order sealing the Rule 60 Motion was issued only minutes later, at 5:29 PM.

(@kompromatbook), TWITTER (Feb. 18, 2022, 9:42 PM), https://bit.ly/3JWkep5.[15]  Third,

according to the article, "Rtskhiladze spokesperson Melanie A. Bonvicino" cited a "decision by

Judge Howell 'to unseal [Bonvicino's] client's grand jury testimony on January 19th for that 18-

hour window.'"  Article.  As is abundantly clear in the record, this Court never authorized the

"unseal[ing]" of this "grand jury testimony."  Rather, *petitioner* (through counsel), in violation of

this Court's orders, publicly filed materials in the related civil case that included disclosures of

grand jury material obtained through petitioner's private review of the transcript, and the

presiding judge in that case promptly sealed the offending filing at the government's request—an

action this Court has no power to disturb.

      All told, this evidence points to petitioner as facilitating to some extent the public

dissemination of information from the Rule 60 Motion.[16]  That history further militates against

providing petitioner a copy of his grand jury transcript.

*   *   *

      In the Denial Order, this Court found that petitioner had articulated no reasons supporting

his request and thus declined to "recognize an automatic entitlement to a transcript copy, and

permission to redisclose the same, for any grand jury witness."  Denial Order, 2022 WL 474134,

at *3.  Neither petitioner's arguments nor any other developments since that time upsets this

conclusion.  If anything, petitioner has newly argued his way out of the necessity for the relief he

---

[15]    *See also* Giorgi Rtskhiladze (@kompromatbook), TWITTER (Feb. 19, 2022, 1:37 PM), https://bit.ly/3uH2HL7; Giorgi Rtskhiladze (@kompromatbook), TWITTER (Feb. 19, 2022, 1:41 PM), https://bit.ly/3iQMzRM; Giorgi Rtskhiladze (@kompromatbook), TWITTER (Feb. 19, 2022, 10:35 PM), https://bit.ly/3JSUV7j; Giorgi Rtskhiladze (@kompromatbook), TWITTER (Feb. 20, 2022, 9:33 PM), https://bit.ly/3uyxPMM.

[16]    The timing of relevant events is, if nothing else, curious.  Petitioner made his unauthorized public filing of the Rule 60 Motion on January 19, 2022, opening a window of public availability that closed the following day.  On February 16, 2022, this Court issued the Denial Order providing petitioner neither a copy of his grand jury transcript nor permission to disclose publicly any part thereof.  Petitioner filed the instant motion the following day, February 17.  The *Daily Mail* article was then published on February 18, describing in some detail the Rule 60 Motion— which the journalist purportedly happened to have accessed during a short window 30 days earlier—and offering reporting and analysis that, while "EXCLUSIVE," went unpublished for the entirety of the preceding month.

doggedly demands.  Petitioner has provided reasonably persuasive argument that the material

facts from the grand jury transcript *relevant to his suit* are in the public domain thanks to the

Senate Report, and by so doing has obviated any need for the entire transcript itself—presumably

broader in scope—to be similarly disclosed for the sake of prosecuting his civil case, vindicating

him in the "court of public opinion," or for any other discernible purpose.

Furthermore, the government has made *some* showing of interests militating against

release of a transcript copy.  *See* Denial Order, 2022 WL 474134, at *4.[17]  Those interests are

now augmented by developments since the time of the Denial Order making apparent that

petitioner's mishandling of grand jury material, in contravention of Court orders, has already

caused improper media publication related to such material.[18]

As an argument of last resort, petitioner insists that "fundamental fairness" demands

release of the transcript.  Pet'r's Recons. Reply at 12.  According to petitioner, then-Attorney

General Barr chose to release a version of the Mueller Report despite not being required to do so,

failed to adequately "redact information that could harm the reputations of nontargets," and

---

[17]     In briefing on the instant motion, petitioner challenges the government's assertion—made in briefing on a
*prior* motion—that secrecy remains important because certain proceedings emanating from the Special Counsel's
work remain pending.  *Compare* Gov't's Resp. Pet'r's Mot. Unseal & Prod. at 12 (listing open cases), *with* Pet'r's
Mot. Recons. at 2 ("DOJ does not even explain the issues in the ongoing Mueller cases and none of them relate to
the defamation in Footnote 112."); Pet'r's Recons. Reply at 10–11 (similar).  This objection is not properly before
the Court in a motion for reconsideration, as petitioner failed to raise it in his reply supporting his previous motion.
*See Banister*, 140 S. Ct. at 1703 (noting that "courts will not address new arguments or evidence that the moving
party could have raised before the decision issued").  In any event, the objection is incomplete.  While petitioner
asserts that any open cases do not relate to Footnote 112, petitioner does not claim that the open cases are unrelated
to the *entire transcript* of petitioner's testimony.

[18]     Petitioner's assurances that the threat of sanctions provides adequate safeguards for breaches of orders
related to the transcript, *see* Pet'r's Recons. Reply at 14, are unconvincing given that this Court, too, has such
authority and the specter of sanctions here was apparently inadequate to preclude misuse.  Petitioner appears to be
laboring under the assumption that his filings in *this* docket are sealed, given his use of the caption "Sealed v.
Sealed" and the case number "No. 1:21-gj-00048 (BAH) (SEALED)" on his filings.  *See* Pet'r's Mot. Recons.;
Pet'r's Recons. Reply.  To be clear: this docket was unsealed on January 10, 2022 in its entirety, with agreement of
the parties, *see* Min. Order (Jan. 10, 2022); Joint Statement on Unsealing, ECF No. 12, and it remains unsealed.
This matters because petitioner's "comparison of the contents of [his] Declaration describing what was asked and
answered in his grand jury appearance," Pet'r's Recons. Reply at 8–10, filed publicly in this unsealed docket, came
perilously close to *another* violation of this Court's orders restricting disclosure of grand jury materials.

"disclose[d] to the public selectively edited and misleading information." *Id.* Though these arguments, implicating the government's conduct with respect to the Mueller Report, may be germane to petitioner's related civil case, they are not at all probative or relevant to the issue at hand: whether petitioner is entitled to an unrestricted copy of his grand jury transcript.[19]

In sum, petitioner has articulated no coherent interests warranting disclosure of a copy of his grand jury transcript not satisfied by the access he has already been provided, and the government has articulated some interests to the contrary. Petitioner has failed to show that relief is warranted under Rule 59(e).[20]

### B.   Filing Transcript in Related Civil Docket

In the alternative, petitioner asks that the government "be required to promptly file the transcript in the related case under seal." Pet'r's Mot. Recons. at 3. According to petitioner, "undoubtedly the court would be better served with the complete transcript" as opposed to the Declaration accompanying the Rule 60 Motion. *Id.* In addition to that conclusory assertion, petitioner argues that filing the transcript is appropriate because "he did not need permission in the related case to file his Declaration summarizing his testimony based upon his review of the transcript," Pet'r's Recons. Reply at 13, an argument that is both unconvincing and untrue. The

---

[19] Petitioner also takes umbrage at the "immature and arrogant attitude of the Government," as evidenced by "its tone-deaf comment that all Petitioner needs to do is take out an ad in the *New York Times* announcing that he is not a 'Russian businessman,'" and even suggests that the current conflict in Ukraine is in some way relevant. Pet'r's Recons. Reply at 12–13, 13 n.6 (citing Gov't's Recons. Opp'n at 7). While the government's remark may be somewhat flippant, and petitioner's renewed interest in clarifying his Georgian heritage is understandable, this brouhaha is irrelevant to the instant motion.

[20] Petitioner suggests that the Denial Order is an "interlocutory decision" to which Rule 59(e) does not apply and therefore the proper standard of review is "as justice requires," affording the Court a great deal of "discretion." Pet'r's Recons. Reply at 3. The characterization of the Denial Order as "interlocutory" is questionable given that the D.C. Circuit has held that district court decisions denying requests for transcript access "constitute 'final decisions' over which [the Circuit] has jurisdiction under 28 U.S.C. § 1291," *In re Grand Jury*, 490 F.3d at 982, and a decision denying a transcript copy has no material difference. In any event, the disposition of the instant motion is the same given that justice does not require petitioner be provided a copy of the grand jury transcript.

claim that the full transcript would now for some reason be of great value to the court in the related case flies in the face of *the entire premise* of this docket: that a sealed declaration based on an in-person review of the transcript would allow petitioner adequately to supplement the record for appeal.  It does not follow that the *entire* transcript is now necessary—unless petitioner's Declaration is deficient in some way, which naturally petitioner does not claim. Separately, petitioner *did* need permission in the related case to file the Declaration even under seal, failed to seek it, and took his non-compliance with Court order a step further by filing the Declaration publicly.  While the Court *sua sponte* granted permission, *nunc pro tunc*, for the Declaration to be filed under seal in the related case, Denial Order, 2022 WL 474134, at *5, the claim that "he did not need permission" is incorrect.

Given the posture in which this alternative request is raised, the proposed order to the government is nothing other than a side-door attempt by petitioner to obtain a copy of his grand jury transcript, using a district court's docket as a convenient intermediary.  Even if petitioner sincerely believes that the full transcript would be helpful there, all of the same considerations discussed *supra* still counsel against taking any action that would cause petitioner to receive a copy of the transcript.  As a result, the government's request that any filing of the full transcript be made *ex parte*, Gov't's Opp'n Recons. at 8, is eminently reasonable and not an "inappropriate" condition as petitioner protests, Pet'r's Recons. Reply at 14.

No indication has been presented that the presiding judge in the related case needs (or wants) to examine petitioner's full grand jury transcript, particularly given the Declaration ostensibly furnishing the relevant facts.  That petitioner "believes the transcript should be filed," Pet'r's Recons. Reply at 3, without more, does nothing to change the nature of petitioner's request: a solution in search of a problem.  All that said, given that the government does not

oppose such a filing, there is nothing objectionable about doing so, but only on an *ex parte* basis. Accordingly, the government may—but is not required—to file the full transcript, under seal and *ex parte*, in the related case without seeking further permission from this Court should the presiding judge in that case so permit.

## IV.    CONCLUSION

For the foregoing reasons, petitioner's Motion for Reconsideration of the Order Denying Unrestricted Access to Petitioner's Grand Jury Transcript or, Alternatively, for an Order that the Departm[en]t of Justice Be Directed to File the Transcript Under Seal in the Related Case, ECF No. 21, is **DENIED**.

Additionally, the government is authorized, but not required, to file the full transcript of petitioner's grand jury testimony, *ex parte* and under seal, in the related civil matter, *Rtskhiladze v. Mueller*, No. 20-cv-1591 (CRC), or any appeal thereof, should the presiding judge in that related case so permit.

An Order consistent with this Memorandum Opinion will be entered contemporaneously.


Date: April 8, 2022


_____
BERYL A. HOWELL
Chief Judge